J-S38015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DESCHAE LOWRY | : | |
| | : | |
| Appellant | : | No. 1338 EDA 2016 |

Appeal from the Judgment of Sentence March 30, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007108-2014


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DE-SCHAE M. LOWRY | : | |
| | : | |
| Appellant | : | No. 1342 EDA 2016 |

Appeal from the Judgment of Sentence March 30, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007099-2014


BEFORE: GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED JULY 25, 2017**

Appellant, Deschae Lowry,[1] appeals from the judgment of sentence

entered in the Delaware County Court of Common Pleas, following his jury

_____

[1] The captions illustrate the alternative spellings for Appellant's first name as
Deschae and De-Schae.

_____

*Former Justice specially assigned to the Superior Court.

trial convictions for first-degree murder and theft, arising from the events which occurred on August 1, 2014, when Appellant fatally strangled Victim in her home and then drove Victim's car from her home to Florida.[2]  We affirm.

The trial court opinion fully and accurately sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.  Procedurally, this Court consolidated Appellant's two notices of appeal on June 2, 2016.

Appellant raises one issue for our review:

> WHETHER THE COURT ERRED IN PERMITTING THE COMMONWEALTH TO INTRODUCE EVIDENCE OF ALLEGED PRIOR BAD ACTS OR OTHER WRONGS FOR WHICH [APPELLANT] WAS NOT ON TRIAL SINCE THE PROBATIVE VALUE OF THAT EVIDENCE DID NOT OUTWEIGH THE POTENTIAL FOR UNFAIR PREJUDICE THAT FLOWED FROM ALL THE EVIDENCE PERTAINING TO PROTECTION FROM ABUSE MATTERS, AS WELL AS ALL OF THE TESTIMONY SUPPLIED BY THE FIRST THREE COMMONWEALTH WITNESSES[?]

(Appellant's Brief at 7).

The standard of review for admission of evidence is as follows:  "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error."  *Commonwealth v. Ballard*, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

---

[2] 18 Pa.C.S.A. §§ 2502(a), 3921(a), respectively.

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman*, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Commonwealth v. Drumheller*, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting *Commonwealth v. Stallworth*, 566 Pa. 349, 363, 781 A.2d 110, 117-18 (2001)).

The Pennsylvania Rules of Evidence govern the admissibility of prior crimes, wrongs, or acts evidence as follows:

**Rule 404. Character evidence; Crimes or Other Acts**

\* \* \*

**(b)   Crimes, Wrongs or Other Acts.**

(1)   *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)   *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3)   *Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1)-(3).

"Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." **Commonwealth v. Collins**, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998). Nevertheless:

[E]vidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

**Id.** at 55, 703 A.2d at 422-23; Pa.R.E. 404(b)(2).   **See also**

- 4 -

*Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1283 (Pa.Super. 2004) (*en banc*) (reiterating "other crimes" evidence is admissible to show motive, intent, absence of mistake or accident, common scheme or plan, and identity). "Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Taylor*, 671 A.2d 235, 247 (Pa.Super. 1996), *appeal denied*, 546 Pa. 642, 683 A.2d 881 (1996). *See also Commonwealth v. Andrulewicz*, 911 A.2d 162, 169 (Pa.Super. 2006), *appeal denied*, 592 Pa. 778, 926 A.2d 972 (2007) (upholding consolidation of three cases against defendant for sexual assault of three minor females because cases demonstrated defendant's common scheme, and jury could separate evidence for each case).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Kevin F. Kelly, we conclude Appellant's issue merits no relief. The trial court opinion fully discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed December 2, 2016, at 10-34) (finding: court permitted Commonwealth to introduce only prior acts evidence Commonwealth proposed in its Rule 404(b) motion, which related to events which occurred within three years preceding Victim's death; court allowed Commonwealth to offer prior acts evidence to establish Appellant's malice, ill will, motive,

- 5 -

and/or requisite intent, including troublesome nature of relationship between Victim and Appellant; court also permitted Commonwealth to present prior acts evidence to show chain and sequence of events on which Appellant's offenses are grounded; Commonwealth's prior acts evidence bore logical connection to Victim's death; court allowed Commonwealth to elicit testimony from Tyeria Sanders concerning tumultuous nature of relationship between Victim and Appellant, including specific arguments, Appellant's theft of money from Victim, and Appellant's assaultive and menacing conduct toward Victim; Ms. Sanders also testified as to murderous threats Appellant made toward Victim; court permitted Commonwealth to elicit testimony from Caren Tribble about nature of relationship Victim had with Appellant and incidents of domestic violence between Victim and Appellant, which occurred in two years preceding Victim's death; Ms. Tribble testified that she saw marks and bruises on Victim and observed domestic violence incident between Victim and Appellant that occurred outside Ms. Tribble's workplace ten months prior to Victim's death; court allowed Commonwealth to elicit testimony from Cindy Void regarding nature of Victim's relationship with Appellant and incidences when Appellant took Victim's car without permission; court permitted Commonwealth to present testimony of Sandra Robinson, court clerk services employee, regarding protection from abuse ("PFA") petitions Victim had completed and PFA orders Victim had obtained against Appellant; court permitted Commonwealth to present testimony of

Officer Michael DeHoratius about his encounter with Victim three weeks prior to Victim's death when Appellant violated PFA order by appearing at Appellant's home; additionally, court provided jurors with cautionary instructions, as to limited purposes for which jury could have considered Commonwealth's prior acts, immediately following testimony of Ms. Sanders, Ms. Tribble, Ms. Void, Officer DeHoratius, and Ms. Robinson; court instructed jury to consider prior acts evidence only for purposes of Appellant's malice, ill will, intent, and motive, and to show chain and sequence of events leading to Victim's death; court specifically instructed jury not to consider prior acts as evidence that Appellant had bad character or criminal propensities; prejudicial effect of Commonwealth's prior acts evidence did not outweigh probative effect of evidence). The record supports the trial court's rationale, and we see no reason to disturb it. **See Ballard, supra**; **Drumheller, supra**; **Collins, supra**. Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2017

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    NOS. 7099-14 and 7108-14

:

v.    :

:

DE-SCHAE LOWRY    :    Superior Court Nos. 1338 EDA 2016
*aka* Deschae Lowry    :    1342 EDA 2016


A. Sheldon Kovach, Esquire – Deputy District Attorney for the Commonwealth
Steven M. Papi, Esquire – Attorney for De-Schae Lowry


## OPINION


Kelly, J.

**Date: December 2, 2016**


### *I. Case History*


A criminal complaint was filed in matter No. 7108-14 on August 5, 2014, by Detective Philip Lydon, Upper Darby Police Department, charging De-Schae Lowry (hereinafter referred to as "Defendant" or "Lowry") with, *inter alia*, theft by unlawful taking (movable property).[1]

A criminal complaint was lodged under case No. 7099-14 on September 18, 2014, by Detective Leo Hanshaw, Upper Darby Police Department, charging Defendant Lowry with, *inter alia*, murder of the first degree.[2] On that same date (September 18, 2014), the magisterial district judge issued for the Defendant a resulting arrest warrant. *See* Arrest Warrant, No. CR 240-14 – Magisterial District Court 32-2-51, dated September 18, 2014.

A joint preliminary hearing commenced on October 17, 2014, before the magisterial district court, but due to the unavailability of several Commonwealth witnesses was adjourned

---

[1] 18 Pa.C.S. §3921(a).
[2] 18 Pa.C.S. §2502(a).

until October 31, 2014. The preliminary hearing reconvened on October 31, 2014, where after the prosecution's presentation of evidence, the magisterial district judge held the Defendant for trial court proceedings in both the above-captioned matters (Nos. 7099-14 and 7108-14) as to all prosecuted offenses. N.T. 10/17/14. N.T. 10/31/14.

Defendant Lowry on November 18, 2014, was formally arraigned before the trial court at which time the Office of the Delaware County District Attorney lodged against him a Criminal Information averring in No. 7099-14, *inter alia*, Count 1 - murder of the first degree;[3] and under No. 7108-14, *inter alia*, Count 1 - theft by unlawful taking (movable property).[4]

On October 9, 2015,[5] the Commonwealth filed in both matters (Nos. 7099-14 and 7108-14) at bar its collective Notice of Intent to Introduce Other Crimes, Wrongs or Acts Evidence Under Pa.R.E. 404(b)(3). *See* Commonwealth's Notice.

This court listed a hearing for October 23, 2015, relevant to the prosecution's 404(b) motion. *See* Hearing Notice dated October 13, 2015. Such a hearing as then scheduled commenced and concluded on that same date (October 23, 2015) before this court. N.T. 10/23/15.

Per an order dated January 11, 2016, the court granted in part and denied in part the Commonwealth's 404(b) application. Certain of the proffered testimony and/or evidence this order permitted was then conditionally allowed subject to the prosecution subsequently showing the same was not relative to the victim's murder too temporally remote. *See* Order dated January 11, 2016, pp. 2-3. *See also* N.T. 1/15/16.

---

[3] 18 Pa.C.S. §2502(a).
[4] 18 Pa.C.S. §3921(a).

[5] Despite having listed this matter for trial numerous times, the proceedings at bar were delayed stemming from defense counsel's repeated continuance requests related to various trial preparations and ongoing plea negotiations.

A hearing took place on January 15, 2016, before this court regarding certain exhibits the prosecution intended at trial to introduce, an exclusionary challenge to a statement the Defendant purportedly made subsequent to his arrest, as well as that evidence and/or testimony this court conditionally permitted resulting from the Commonwealth's 404(b) motion, subject to the prosecution establishing the same was not in time too remote as related to the date of the victim's murder. N.T. 1/15/16, pp. 1-12, 22-41. *See also* Commonwealth's Notice and Order dated January 11, 2016, pp. 2-3.

A collective jury trial in the above-captioned matters commenced before this court on January 20, 2016, proceeded over the next two (2) days, was adjourned over the weekend, and resumed on Monday, January 25, 2016.[6] The jury on that same day (January 25, 2016) found Defendant Lowry guilty under docket No. 7099-14 as to Count 1 - Murder in the First Degree[7] and in case No. 7108-14, Count 1 – Theft by Unlawful Taking (movable property).[8] *See* Verdict.[9] Immediately following the recording of the jury's verdict the court directed a presentence investigation to be completed as well as a psychological evaluation. N.T. 1/25/16, pp. 93-97. *See generally* Pa.R.Crim.P. 702.

A sentencing hearing took place before this court on March 30, 2016. N.T. 3/30/16. The Defendant was then sentenced per No. 7099-14, Count 1 – Murder of the First Degree,[10] to a

---

[6] Prior to the commencement of the trial's evidentiary presentation, without objection, the Commonwealth, of-record, withdrew the balance of its past filed Criminal Informations' counts and proceeded only on the following: No. 7099-14 - Count 1 – Murder of the First Degree, 18 Pa.C.S. §2502(a); and Murder of the Third Degree, 18 Pa.C.S. §2502(c); and No. 7108-14 - Count 1 – Theft by Unlawful Taking, 18 Pa.C.S. §3921(a). N.T. 1/15/16, pp. 12-13.

[7] 18 Pa.C.S. §2502(a).

[8] 18 Pa.C.S. §3921(a).

[9] Via its verdict, the jury found that the movable property stolen by the Defendant was an automobile and this conviction was thus for gradation purposes a third degree felony. *See* Verdict. *See also* 18 Pa.C.S. §3903(a.1).

[10] 18 Pa.C.S. §2502(a).

3

mandated term of life imprisonment without parole possibility.[11] In No. 7108-14, Defendant Lowry was sentenced per Count 1 – Theft by Unlawful Taking (movable property)[12] to a one (1) to two (2) year period of incarceration. This sentence of No. 7108-14 was directed to run consecutive to the sentence under No. 7099-14 (first degree murder).[13] N.T. 3/30/16, pp. 19-20. *See also* Certificates of Imposition of Judgment of Sentence, Nos. 7099-14 and 7108-14.

Regarding both of the above-captioned matters, no timely or post-sentence motions otherwise were filed.

On April 28, 2016, Defendant Lowry timely lodged counseled Notices of Appeal in both the above-captioned dockets (Nos. 7099-14 and 7108-14). *See* Notices of Appeal, Nos. 7099-14 and 7108-14. *See also* Superior Court Nos. 1338 EDA 2016 and 1342 EDA 2016.

The court by an order dated May 6, 2016, directed the Defendant's lawyer to file of-record concise statements of matters complained of on appeal. *See* Order dated May 6, 2016. *See also* Pa.R.A.P. 1925(b).

Defendant Lowry on May 18, 2016, lodged separately per each case number (Nos. 7099-14 and 7108-14) Petitions for Extension of Time to File Statement of Matters Complained. *See* Petitions for Extension, Nos. 7099-14 and 7108-14.

Through an order dated May 20, 2016, this court granted the defense's extension applications. *See* Order dated May 20, 2016.

The Defendant's attorney on June 14, 2016, respectively filed in both matters (Nos. 7099-14 and 7108-14) the below discussed statements of errors on appeal. *See* Concise Statements of Matters Complained, Nos. 7099-14 and 7108-14.

---

[11] 18 Pa.C.S. §1102(a)(1).
[12] 18 Pa.C.S. §3921(a).
[13] 18 Pa.C.S. §2502(a).

4

## II. Discussion

### A. The Court erred in permitting the Commonwealth to introduce evidence of alleged prior bad acts or other wrongs for which Mr. Lowry was not on trial since the probative value of that evidence did not outweigh the potential for unfair prejudice. This includes all evidence pertaining to protection from abuse matters, as well as all of the testimony supplied by the first three Commonwealth witnesses.[14]

By this appellate complaint, Defendant Lowry contends this court erred in allowing evidence to be introduced at trial concerning his "alleged prior bad acts or other wrongs" as the "probative value of that evidence did not outweigh the potential for unfair prejudice." *See* Statement of Matters Complained, No. 7099-14, No. 1. More specifically, the Defendant challenges this court granting, in part, the Commonwealth's 404(b) motion and permitting the prosecution at trial to present evidence of the victim, Masako Griffin, having filed against him certain of her protection from abuse petitions, the outcomes of those abuse proceedings, the actions of Defendant Lowry underlining such petitions, and the related testimony of Tyeria Sanders,[15] Caren Tribble and Cindy Void.[16] *See* Commonwealth's Notice; Order dated January 11, 2016; N.T. 10/23/15, pp. 5-22; Commonwealth Exhibits CM-2, CM-3, CM-4, CM-5, CM-7, CM-8, CM-10; N.T. 1/15/16, pp. 1-8; N.T. 1/21/16, pp. 5-53; and Commonwealth Exhibits C-2, C-3 and C-4. This court on a review of the salient case record did not abuse its discretion in partially granting the Commonwealth's 404(b) application and allowing the prosecution's

---

[14] *See* Statement of Matters Complained, No. 7099-14, No. 1.

[15] Ms. Sanders per her handwritten statement dated December 16, 2014, noted her first name to be "Tyeria," as opposed to the notes of testimony which use the spelling "Tierra." *See* Commonwealth Exhibits CM-2 – Statement of Tyeria Sanders and C-2 – Statement of Tyeria Sanders. *See also* N.T. 1/21/16, p. 5. Recognizing Ms. Sanders listed her name as "Tyeria," this court will use such a spelling.

[16] In her handwritten statement dated October 27, 2014, Ms. Void wrote her surname as "Void," versus the trial transcript which uses the name "Boid." *See* Commonwealth Exhibits CM-4 – Statement of Cindy Void and C-4 – Statement of Cindy Void. *See also* N.T. 1/21/16, p. 5. Because Ms. Void self-authored her name as "Void," the court will likewise use this spelling.

5

introduction at trial the evidence now complained about on appeal. This error assignment is meritless.

The applicable review standard of a trial court's evidentiary rulings is as follows:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

> *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super. 2009) (quoting *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530, 550 (2002)). 'An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.' *Id.* at 1188–89 (citing *Commonwealth v. Carroll*, 936 A.2d 1148, 1152–53 (Pa.Super. 2007)). 'An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant.' *Id.* (quoting *Commonwealth v. Viera*, 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995)).

*Commonwealth v. Antidormi*, 84 A.3d 736, 749-50 (Pa.Super. 2014).

The relevant provision of the Pennsylvania evidentiary rules provides, in material part, the following:

> (b) Crimes, Wrongs or Other Acts.

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity,

6

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)(2).

Regarding evidence of crimes, wrongs or other similar acts, the burden is on the party seeking admission of the same to sufficiently demonstrate the exception(s) to the general rule's prohibition. *Id.* Hence, the Commonwealth as the proponent of this challenged evidence was required to adequately establish its admissibility, *inter alia*, including but not limited to materiality and the evidence's probative value outweighing its potentiality for unfair prejudice. *Id.*

The Pennsylvania Supreme Court in explaining rule 404(b) of the Pennsylvania evidence code has noted that below:

Evidence of 'other crimes, wrongs, or other acts' is inadmissible solely to show a defendant's bad character or his propensity for committing criminal acts. Pa.R.E. 404(b)(1); *Commonwealth Lark,* 518 Pa. 290, 543 A.2d 491 (1988). Such evidence is admissible, however, when relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Pa.R.E. 404(b)(2); *Commonwealth v. Chmiel,* 585 Pa. 547, [603-04], 889, A.2d 501, 534 (2005). This Court has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.' *Commonwealth v. Williams,* 586 Pa. 553, [580], 896 A.2d 523, 539 (2006); *Commonwealth v. Paddy,* 569 Pa. 47, [70-71], 800 A.2d 294, 308 (2002); *Lark,* [518 Pa. at 303-04,] 543 A.2d at 497. Such evidence may be admitted, however, 'only if the probative value of the evidence outweighs its potential for unfair prejudice.' Pa.R.E. 404(b)(2).

*Commonwealth v. Hairston,* 624 Pa. 143, 157, 84 A.3d 657, 665 (2014).

7

"As the comment to Rule 403 instructs, ' '[u]nfair prejudice' means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.' " *Id.* 624 Pa. at 159, 84 A.3d at 666 *quoting* Pa.R.E. 403 (Comment).

The *res gestae* or complete story exception to the 404(b) rule's general barring the admission of previous crimes and/or wrongful acts evidence allows the admissibility of the same " 'where [it] was part of the chain or sequence of events which became part of the history of the case and formed part of natural development of the facts.' " *Commonwealth v. Paddy supra* 569 Pa. at 70-71, 800 A.2d at 308 *quoting Commonwealth v. Lark supra* 518 Pa. at 303, 543 A.2d at 497.

"To be admissible under this exception, there must be a specific 'logical connection' between the other act[s] and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Cox*, 115 A.3d 333, 337 (Pa.Super. 2015) *quoting Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa.Super. 2012)(*en banc*), *appeal denied*, 621 Pa. 657, 72 A.3d 603 (2013).

The appellate courts of Pennsylvania have declined to direct a bright line threshold whether proffered prior criminality and/or acts of wrongdoing are too temporally remote. *Commonwealth v. Reed*, 605 Pa. 431, 447, 990 A.2d 1158, 1168 (2010) and *Commonwealth v. Ulatoski*, 472 Pa. 53, 63, 371 A.2d 186, 191 (1997)(" ... [T]he testimony may involve events so remote from the date of the crime that it has no probative value. However, no rigid rule can be formulated for determining when such evidence is no longer relevant.") *citing Commonwealth v. Minoff*, 363 Pa. 287, 295, 69 A.2d 145, 149-50 (1949) and *Commonwealth v. Jones*, 269 Pa. 589, 592, 113 A. 57, 58-59 (1921). Rather, the Superior Court has held " ' ... remoteness in time is a factor to be considered in determining the probative value of other crimes evidence ... .' "

8

*Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa.Super. 2010) *quoting Commonwealth v. Luktisch*, 451 Pa.Super. 500, 503, 680 A.2d 877, 879 (1996) *quoting Commonwealth v. Miller*, 541 Pa. 531, 548-50, 664 A.2d 1310, 1319 (1995), *overruled on other grounds, Commonwealth v. Hanible*, 575 Pa. 255, 836 A.2d 36 (2003).

The Pennsylvania Supreme Court found proper the admission at trial of a defendant's varied actions of domestic violence targeting the victim over a thirty-four (34) month time span preceding her murder for purposes of establishing his malice, ill will, motive, and intent, as well as to show the chain and sequence of events on which the criminal homicide prosecution was grounded. *Commonwealth v. Drumheller*, 570 Pa. 117, 137-39, 808 A.2d 893, 905-06 (2002).

The Supreme Court of Pennsylvania has similarly long recognized that for purposes of proving ill will, motive and/or malice evidence detailing the relationship between a defendant and a murder victim is relevant and admissible. *Commonwealth v. Ulatoski supra* 472 Pa. at 60, 371 A.2d at 190 *citing Commonwealth v. Nelson*, 396 Pa. 359, 152 A.2d 913 (1959); *Commonwealth v. Peyton*, 360 Pa. 441, 62 A.2d 37 (1948); *Commonwealth v. Barnak*, 357 Pa. 391, 54 A.2d 865 (1947); *Commonwealth v. Boden*, 399 Pa. 298, 159 A.2d 894 (1960); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960); *Commonwealth v. Patskin*, 372 Pa. 402, 93 A.2d 704 (1953); and *Commonwealth v. Delfino*, 259 Pa. 272, 102 A. 949 (1918). The Pennsylvania Supreme Court of significance to current concerns relatedly observed the following:

> This principle applies when the decedent was the spouse of the accused. J. Wigmore, Evidence (3d ed. 1940) at 439. Thus, evidence concerning the nature of the marital relationship is admissible for purpose of proving ill will, motive or malice. *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Kravitz supra*; *Commonwealth v. Boden supra*; *Commonwealth v. Nelson supra*; *Commonwealth v. Peyton supra*;

*Commonwealth v. Jones* [*supra.*] This includes, in particular, evidence that the accused physically abused his ... spouse.

*Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*).

In assessing whether the probative value of proffered 404(b) evidence is outweighed by its potential for unfair prejudice, the Supreme Court of Pennsylvania has opined that below:

> Not surprisingly, criminal defendants always wish to excise evidence of unpleasant and unpalatable circumstances surrounding a criminal offense from the Commonwealth's presentation at trial. Of course, the courts must make sure that evidence of such circumstances have some relevance to the case and are not offered solely to inflame the jury or arouse prejudice against the defendant. The [trial] court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged ... .

*Commonwealth v. Lark supra* 518 Pa. at 310, 543 A.2d at 501.

Evidence of a defendant's past crimes and/or wrongful actions even if found relevant with a probative value outweighing any unfair prejudice may yet " ... be inadmissible if it violates a rule of competency, such as the hearsay rule." *Commonwealth v. Paddy supra* 569 Pa. at 70-71, 800 A.2d at 308 *citing Commonwealth v. Myers*, 530 Pa. 396, 401, 609 A.2d 162, 164-65 (1992).

Via its 404(b) filing, the prosecution provided timely pretrial warning of its intent to introduce at trial testimony and/or other evidence that "[o]n various dates between January 1999 and August 2014, the defendant subjected Masako Griffin to instances of domestic violence; the Defendant struck, choked, and threatened to kill Masako Griffin, as well as stole and/or damaged the vehicle belonging to Masako Griffin." *See* Commonwealth's Notice – Paragraph No. 1. *See also* Pa.R.E. 404(b)(3).

As articulated with greater specificity at the first such hearing before this court (October 23, 2015), the Commonwealth for trial purposes sought to elicit testimony and/or present such other related evidence per the following:

The testimony of D. G. is detailed per her statement dated September 25, 2015. *See* Commonwealth Exhibit CM-1 – Statement of D. G. .

The testimony of Tyeria Sanders as reflected via her statement of December 16, 2014. *See* Commonwealth Exhibit CM-2 – Statement of Tyeria Sanders.

The testimony of Caren Tribble per that detailed by her statement dated October 21, 2014. *See* Commonwealth Exhibit CM-3 – Statement of Caren Tribble.

The testimony of Cindy Void as reflected via her statement of October 27, 2014. *See* Commonwealth Exhibit CM-4 – Statement of Cindy Void.

The protection from abuse action docketed at *Griffin v. Lowry*, No. 14-80916 – Delaware County. *See* Commonwealth Exhibit CM-5 – Protection from Abuse Petition, No. 14-80916.

An audio recording of the protection from abuse proceedings before the Honorable Ann A. Osborne on July 17, 2014, regarding the entry of a final protective order in the abuse action detailed immediately above (No. 14-80916) and the indirect criminal contempt prosecution more fully described just below (No. MD 36-14) resulting from allegations the Defendant violated the temporary protection from abuse order entered in No. 14-80916 previously. *See* Commonwealth Exhibit CM-6 – Audio Disk of July 17, 2014, Court Hearing.

The indirect criminal contempt prosecution lodged against the Defendant under the docket of *Commonwealth v. Lowry*, No. MD 36-14 – Delaware County. *See* Commonwealth Exhibit CM-7 – Criminal Complaint, Probable Cause Affidavit and Upper Darby Police Incident Report, No. MD 36-14.

The protection from abuse action docketed under *Griffin v. Lowry*, No. 13-81449 – Delaware County. *See* Commonwealth Exhibit CM-8 – Protection from Abuse Petition, No. 13-81449.

11

An audio recording of the court proceedings held on September 19, 2013, before the Honorable Nathaniel C. Nichols material to the entry of a final protective order in the protection from abuse action described immediately above, No. 13-81449. *See* Commonwealth Exhibit CM-9 – Audio Disk of September 19, 2013, Court Hearing.

The protection from abuse action docketed under *Griffin v. Lowry*, No. 12-80125 – Delaware County. *See* Commonwealth Exhibit CM-10 – Protection from Abuse Petition, No. 12-80125.

The protection from abuse action docketed under *Griffin v. Lowry*, No. 09-81077 – Delaware County. *See* Commonwealth Exhibit CM-11 – Protection from Abuse Petition, No. 09-81077 – Delaware County.

The protection from abuse action docketed under *Griffin v. Lowry*, No. 08-80665 – Philadelphia County. *See* Commonwealth Exhibit CM-12 – Protection from Abuse Petition, No. 08-80665 – Philadelphia County.

An incident occurring on August 25, 2001, and Masako Griffin relatedly reporting to the Philadelphia Police Department that the Defendant had then menaced as well as threatened her at gun point, involved law enforcement recovering the firearm, and the Defendant's resultant arrest. *See* Commonwealth Exhibit CM-13 – Philadelphia Police Department Arrest Report.

N.T. 10/23/15, pp. 5-11.

Salient to present considerations, the Commonwealth then (October 23, 2015) as well confirmed, of-record, its intention to call at trial as its witnesses, *inter alia*, the following persons: D⸱            G⸱    ⸴ Tyeria Sanders; Caren Tribble; and Cindy Void.  *See* Commonwealth Exhibits CM-1 – Statement of D⸱            G⸱    ⸴ CM-2 – Statement of Tyeria Sanders; CM-3 – Statement of Caren Tribble; and CM-4 – Statement of Cindy Void.  The prosecution likewise noted, of-record, it also for trial purposes intended to call as witnesses the Upper Darby police officer who encountered the Defendant at Masako Griffin's residence, arrested him, and charged Defendant Lowry with indirect criminal contempt per docket No. MD

12

36-14, and additionally the Philadelphia law enforcement official to whom Masako Griffin in 2001 reported the Defendant menacing and threatening her at gun point. N.T. 10/23/15, pp. 10-11. *See also* Commonwealth Exhibits CM-7 – Criminal Complaint, Probable Cause Affidavit and Upper Darby Police Incident Report, No. MD 36-14, and CM-13 – Philadelphia Police Department Arrest Report.

Opposing the Commonwealth's 404(b) application, defense counsel, similar to the instant error assignment, argued the possible prejudice outweighed such evidence's probative value, as well as the prosecution's proffered protection from abuse action court hearing audio recordings, if admitted, would be violative of applicable constitutional protections and that certain other suggested evidence of the Commonwealth was simply too attenuated to the at issue murder. N.T. 10/23/15, pp. 11-15. *See also* Commonwealth Exhibits CM-6; CM-9; and CM-13.

This court by its order of January 11, 2016, detailed the Commonwealth's proffered 404(b) evidence which was permitted at trial, certain other such evidence that was conditionally allowed pending the prosecution subsequently establishing a temporal nexus, and on accepting certain of defense counsel's oppositional arguments, the tendered evidence and/or testimony of the Commonwealth which was barred from the trial. *See* Order dated January 11, 2016.

The court directed that the prosecution was wholly precluded at trial from presenting the testimony of D⸱ G⸱ as proffered via her statement dated September 25, 2015. *See* Commonwealth Exhibit CM-1 – Statement of D⸱ G⸱ and Order dated January 11, 2016, p. 1. D⸱ G⸱ is the eleven (11) year old natural daughter of the murder victim, Masako Griffin, and Defendant Lowry. Not surprisingly, given this witness's tender age, her statement and by extension the testimony the Commonwealth sought to present through this child's witness appearance per that her statement detailed was generalized, conclusory, and

13

seemingly without a competent evidentiary basis. Immaterial to the above-captioned matter, the most descriptive portion of this minor witness's statement concerned familial strife and discord between an older brother and the Defendant as well as a seemingly related, assaultive incident involving the elder sibling, Defendant Lowry and a cousin, "John." *See* Commonwealth Exhibit CM-1 – Statement of D. G. , pp. 1-2 and Order dated January 11, 2016, p. 9.

Relevant to her statement of December 16, 2014, the prosecution sought to elicit such testimony from Tyeria Sanders. *See* Commonwealth Exhibit CM-2 – Statement of Tyeria Sanders. The court via its order (January 11, 2016) found this witness's proffered statement (CM-2) was replete with evidence relevant to the apparent tumultuous nature of the relationship between the decedent, Masako Griffin, and the Defendant, including but not limited to specific arguments, the theft of money, various assaultive and/or menacing actions of the Defendant directed to Ms. Griffin, as well as Defendant Lowry uttering murderous threats. *See* Commonwealth Exhibit CM-2 – Statement of Tyeria Sanders and Order dated January 11, 2016, pp. 9-10. *See also Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*) and *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06. However, this court from its review of Ms. Sanders' pre-trial statement (CM-2) was unable to discern with reasoned certainty when the recounted incidents of domestic violence and/or threats supposedly occurred. *See* CM-2 – Statement of Tyeria Sanders and Order dated January 11, 2016, p. 10. *See also Commonwealth v. Aikens supra* 990 A.2d at 1185 *quoting Commonwealth v. Luktisch supra* 451 Pa.Super. at 503, 680 A.2d at 879 *quoting Commonwealth v. Miller supra* 541 Pa. at 548-50, 664 A.2d at 1319.

14

Resultantly, the court conditionally allowed the Commonwealth to present this testimony from Ms. Sanders, subject to the prosecution first establishing about the same relevant time parameters. *See* Order dated January 11, 2016, pp. 1-2, 9-10.

At the hearing of January 15, 2016, the Commonwealth identified for this court that the events referenced through Ms. Sanders' statement[17] took place over the time span from 2011 through 2014. N.T. 1/15/16, p. 4. On being advised of the material time period surrounding that which Ms. Sanders' statement detailed, this court permitted the prosecution to elicit such testimony of Tyeria Sanders as reflected via her December 16, 2014, statement. N.T. 1/15/16, p. 7. *See also* Commonwealth Exhibits CM-2 – Statement of Tyeria Sanders and C-2 – Statement of Tyeria Sanders; and N.T. 1/21/16, pp. 5-26.

At trial, the Commonwealth was allowed to present the testimony of Caren Tribble as described by her statement dated October 21, 2014,[18] regarding an approximate 2013 incident outside the witness's place of employment during which the Defendant allegedly physically accosted Masako Griffin. *Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*) and *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06. *See also* Order dated January 11, 2016, p. 2; Commonwealth Exhibits CM-3 – Statement of Caren Tribble, p. 2 and C-3 – Statement of Caren Tribble; and N.T. 1/121/16, pp. 26-47.

The prosecution for purposes of trial also sought to present testimony from Ms. Tribble about her observing marks and/or bruising about Masako Griffin's person. Beyond this witness (Ms. Tribble) referencing the incident of physical abuse occurring outside her place of employment approximately ten (10) months prior to the at issue criminal homicide, this court could not discern from its review of Ms. Tribble's statement when the balance of the domestic

---

[17] *See* Commonwealth Exhibit CM-2 - Statement of Tyeria Sanders.
[18] *See* Commonwealth Exhibit CM-3 - Statement of Caren Tribble.

violence between the victim and Defendant Lowry she recounted. *See* Commonwealth Exhibit CM-3 – Statement of Caren Tribble, p. 2. *See also Commonwealth v. Reed supra* 605 Pa. at 447, 990 A.2d at 1168 and *Commonwealth v. Aikens supra* 990 A.2d at 1185 *quoting Commonwealth v. Luktisch supra* 451 Pa.Super. at 503, 680 A.2d at 879 *quoting Commonwealth v. Miller supra* 541 Pa. at 548-50, 664 A.2d at 1319. This court thus conditionally permitted such trial testimony of Ms. Tribble, *inter alia*, provided the prosecution could demonstrate a sufficient time nexus relative to this alleged domestic abuse and the date of the victim's murder. *See* Order dated January 11, 2016, pp. 2, 10.

The Commonwealth at the subsequent hearing (January 15, 2016) proffered that the alleged incidents took place over the course of two (2) separate time periods, the first was two (2) years before Masako Griffin's death while the second was eleven (11) years prior. N.T. 1/15/16, p. 4. Agreeing with the objection of defense counsel, the court directed that the details relating to the incident which took place eleven (11) years previous to Masako Griffin's murder were not to be included in the prosecution's trial evidentiary presentation. N.T. 1/15/16, pp. 7-8. Thus, the Commonwealth was limited at trial to eliciting testimony from Ms. Tribble about the purported incidents of domestic violence and/or the seemingly troubled nature of the Defendant's and Ms. Griffin's relationship to such incidents which occurred in just the two (2) years preceding her death. N.T. 1/15/16, p. 8.

By its January 11, 2016, order, this court prohibited the prosecution from presenting at trial this witness's, Caren Tribble, personal, conclusory opinion testimony that Defendant Lowry was a purported " ... liar, master manipulator, ... abusive person, evil [and/or] very controlling." *See* Commonwealth Exhibit CM-3 – Statement of Caren Tribble, pp. 1, 2 and Order dated January 11, 2016, p. 2. At trial, the Commonwealth was similarly directed to not elicit testimony

16

from this witness regarding her personal beliefs that the decedent, Masako Griffin, " ... was a sweet, genuine god fearing woman who always seen go [*sic*] in people when there wasn't and Mr. Lowry was one of those person [*sic*]." *See* Commonwealth Exhibit CM-3 – Statement of Caren Tribble, p. 2 and Order dated January 11, 2016, p. 2. Likewise, the prosecution was barred at trial from offering via this witness (Caren Tribble) any testimony about Defendant Lowry supposedly being physically abusive toward a son. *See* Order dated January 11, 2016, pp. 2-3 and Commonwealth Exhibit CM-3 – Statement of Caren Tribble, p. 2.

The Commonwealth for purposes of trial also sought to elicit testimony from Cindy Void as reflected via her statement of October 27, 2014, salient to the supposed nature of the relationship between the Defendant and Masako Griffin, and/or Defendant Lowry damaging the decedent's personal property. *See* Commonwealth Exhibit CM-4 – Statement of Cindy Void. At trial, Ms. Void was permitted to testify consistent with this court's previous order (January 11, 2016) as to such events and/or circumstances taking place throughout 2011 and 2012.[19]  N.T. 1/21/16, pp. 49-53. *See also* Order dated January 11, 2016, pp. 3, 10; Commonwealth Exhibits CM-4 - Statement of Cindy Void and C-4 - Statement of Cindy Void.

The prosecution at trial was allowed to present documentary evidence and related testimony of the protection from abuse action docketed under *Griffin v. Lowry*, No. 14-80916 – Delaware County. *See* Commonwealth Exhibit CM-5 – Protection from Abuse Petition, No. 14-80916. *See Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*) and *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06; *Commonwealth v. Paddy supra* 569 Pa. at 70-71, 800 A.2d at 308 *quoting Commonwealth v. Lark supra* 518 Pa. at 303-04, 543 A.2d at 497; and *Commonwealth v. Stallworth*, 566 Pa. 349,

---

[19] During its trial examination of Ms. Void, the Commonwealth's inquiries solely pertained to the Defendant's various, past takings of Masako Griffin's motor vehicle without her permission in the years 2011 and 2012. N.T. 1/21/16, pp. 50-51.

17

362-65, 781 A.2d 110, 117-18 (2001). *See also* Order dated January 11, 2016, p. 3; N.T. 10/23/15, pp. 6-8; and Commonwealth Exhibit CM-5 – Protection from Abuse Petition, No. 14-80916.

However, the Commonwealth at trial was prohibited from introducing the audio recording of the July 17, 2014, protection from abuse proceedings in No. 14-80916 before the Honorable Ann A. Osborne. *See* Commonwealth Exhibit CM-6 – Audio Disk of July 17, 2014, Court Hearing. In short, this court having listened to the abuse hearing's recording (CM-6) did not find persuasive the prosecution's argument that during this protection from abuse proceeding the decedent, Masako Griffin, was subject to "competent cross examination." *See* Commonwealth's Notice, p. 2.[20] As the Commonwealth conceded, Defendant Lowry at this protection from abuse listing (July 17, 2014) for purposes of the court determining whether a final protective order was to be entered did not enjoy the benefit of counsel's stewardship. N.T. 10/23/15, p. 16. Although during his cross-examination of Ms. Griffin the Defendant did pose some questions, he largely offered the presiding judge an ongoing narrative recounting his version of the disputed events.[21] *See* Order dated January 11, 2016, pp. 3, 10-11; and

---

[20] The Commonwealth's Notice lacks pagination and the court thus references this filing's pages sequentially starting with the pleading's first page as number one (1).

[21] The Pennsylvania Supreme Court regarding a defendant's right to cross-examination recognized the following:

> Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him. *Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924 (1990) (collecting cases). However, it is well established that an unavailable witness' prior recorded testimony ... is admissible at trial and will not offend the right of confrontation, *provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding. Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977). ... This Court has repeatedly recognized the vital role that cross-examination plays, especially in a criminal setting. *Commonwealth ex rel. Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990); *see also, Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). ... This court ... addressed the notion that the opportunity to cross-examine must be *fair* given the circumstances of the particular matter in order for such cross-examination to be deemed adequate in *Commonwealth v. Mangini*, 493 Pa. 203, 425 A.2d 734

18

Commonwealth Exhibit CM-6 – Audio Disk of July 17, 2014, Court Hearing. Furthermore, this court was concerned that the jury hearing the murder victim (Ms. Griffin) recounting in her own voice such allegations of domestic violence had the potentiality for unfair prejudice, particularly recognizing this evidence was otherwise available to the prosecution through the documentary evidence it allowed relevant to the same protective action (CM-5 – Protection from Abuse Petition, No. 14-80916). *Commonwealth v. Hairston supra* 624 Pa. at 159, 84 A.3d at 666 *quoting* Pa.R.E. 403 (Comment).

The Commonwealth for purposes of trial was allowed to offer evidence of the indirect criminal contempt of prosecution lodged against the Defendant under the docket of *Commonwealth v. Lowry*, No. MD 36-14 – Delaware County. *See Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-96; *Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*); and *Commonwealth v. Stallworth supra* 566 Pa. at 362-65, 781 A.2d at 117-18. *See also* Order dated January 11, 2016, pp. 3, 4, 12; Commonwealth Exhibit CM-7 – Criminal Complaint, Probable Cause Affidavit and Upper Darby Police Incident Report, No. MD 36-14; Commonwealth Exhibit C-7 - Protection from Abuse Petition, No. 14-80916; and N.T. 1/21/16, p. 79.

Although the prosecution was at trial allowed to introduce evidence salient to this indirect criminal contempt allegation (No. MD 36-14), including but not limited to the factual circumstances surrounding the Defendant violating the then in effect protective order,[22] his

---

(1981). ... As we noted in *Mangini*, the exception for admission of prior testimony is 'predicated on the 'indicia of reliability' normally afforded by adequate cross-examination. ... *Id.* at 213, 425 A.2d at 739.'

*Commonwealth v. Bazemore*, 531 Pa. 582, 585, 586-87, 588, 614 A.2d 684, 685, 686, 687 (1992). (Emphasis added in bold).

[22] *See Griffin v. Lowry*, No. 14-80916. *See also* Commonwealth Exhibits CM-5 – Protection from Abuse Petition, No. 14-80916 and C-7 - Protection from Abuse Petition, No. 14-80916.

19

resultant arrest and being charged with indirect criminal contempt, the Commonwealth was not permitted to present any evidence of Defendant Lowry's resultant guilty plea. *See* Order dated January 11, 2016, pp. 3, 4, 11. *See also* Commonwealth Exhibit CM-6 – Audio Disk of July 17, 2014, Court Hearing.

While this court believed evidence of the Defendant violating the protective order entered in case No. 14-80916, his arrest and being charged with indirect criminal contempt, *inter alia*, for appearing at the victim's home, a residence from which by a protective order he was excluded, and the scene where Ms. Griffin was subsequently found murdered, just three (3) weeks prior to the at issue homicide was properly admitted during trial for purposes of the Commonwealth attempting to establish his malice, ill will, motive and/or intent as well as to show the chain and sequence of events on which this murder prosecution rested, *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06, it had significant concerns that evidence of this indirect criminal contempt case (No. MD 36-14) resolving via the Defendant's counseled plea of guilty most certainly had the potential for diverting the jury's attention from an impartial consideration of the trial's otherwise presented evidence. (*E.g.* The Defendant's past admission of guilt that he engaged in domestic abuse victimizing Masako Griffin *could* be afforded by at least some jurors undue weight when deciding whether the Commonwealth's trial evidence proved his guilt of the prosecuted criminal charges at bar similarly grounded on Ms. Griffin's ultimate victimization.) *See* Order dated January 11, 2016, pp. 3, 4, 11. *See also Commonwealth v. Hairston supra* 624 Pa. at 157, 159, 84 A.3d at 665, 666 *quoting* Pa.R.E. 403 (Comment).

The prosecution at trial was allowed to present evidence regarding the Protection from Abuse action docketed under *Griffin v. Lowry*, No. 13-81449 – Delaware County. *See* Order

20

dated January 11, 2016, p. 4; Commonwealth Exhibits CM-8 – Protection from Abuse Petition, No. 13-81449 and C-6 – Protection from Abuse Petition and Order, No. 13-81449; and N.T. 1/21/16, pp. 74-79. *See Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*) and *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06. *See also Commonwealth v. Paddy supra* 569 Pa. at 70-71, 800 A.2d at 308 *quoting Commonwealth v. Lark supra* 518 Pa. at 303-04, 543 A.2d at 497 and *Commonwealth v. Stallworth supra* 566 Pa. at 362-65, 781 A.2d at 117-18.

At trial, the Commonwealth was barred from introducing the audio recording of the court proceedings held on September 19, 2013, before the Honorable Nathaniel C. Nichols material to the entry of the final protective order in the protection from abuse action, No. 13-81449. *See* Order dated January 11, 2016, p. 4 and Commonwealth Exhibit CM-9 – Audio Disk of September 19, 2013, Court Hearing. Like its argument concerning the audio recording of the July 17, 2014, protection from abuse hearing (CM-6), the prosecution averred that during this September 2013 court proceeding the " ... Defendant undertook a competent cross examination of Masako Griffin ... ," while again conceding he was then self-represented. *See* Commonwealth's Notice, p. 3 and N.T. 10/23/15, pp. 19-21. Although the Defendant engaged in some cross-examination of the decedent, his questioning of Ms. Griffin quickly delved into his presenting to the presiding judge a competing narrative of contested events. *See* Order dated January 11, 2016, pp. 4, 11. *See also* Commonwealth Exhibit CM-9 – Audio Disk of September 19, 2013, Court Hearing. *See also Commonwealth v. Bazemore supra* 531 Pa. at 585, 586-87, 588, 614 A.2d at 685, 686, 687. This court was also again concerned that the jury hearing the murder victim (Ms. Griffin) detail in her own voice these domestic abuse claims had the possibility of creating unfair prejudice, once more recognizing this evidence was otherwise

21

available at trial to the Commonwealth via the documentary evidence it permitted about this same protective action (Commonwealth Exhibit CM-8 — Protection from Abuse Petition, No. 13-81449). *Commonwealth v. Hairston supra* 624 Pa. at 159, 84 A.3d at 666 *quoting* Pa.R.E. 403 (Comment).

The Commonwealth was permitted to introduce evidence at trial of the protection from abuse action docketed under *Griffin v. Lowry*, No. 12-80125 — Delaware County. *See* Order dated January 11, 2016, pp. 4, 11-12; Commonwealth Exhibits CM-10 — Protection from Abuse Petition, No. 12-80125 and C-5 — Protection from Abuse Petition, No. 12-80125; and N.T. 1/21/16, pp. 72-74. *See also Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (*citations omitted*) and *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06. *See also Commonwealth v. Paddy supra* 569 Pa. at 70-71, 800 A.2d at 308 *quoting Commonwealth v. Lark supra* 518 Pa. at 303-04, 543 A.2d at 497 and *Commonwealth v. Stallworth supra* 566 Pa. at 362-65, 781 A.2d at 117-18.

The prosecution was prohibited from offering at trial evidence regarding the protection from abuse action docketed under *Griffin v. Lowry*, No. 09-81077 — Delaware County. *See* Order dated January 11, 2016, pp. 4, 11-12. *See* Commonwealth Exhibit CM-11 — Protection from Abuse Petition, No. 09-81077 — Delaware County. The allegations of domestic abuse alleged in support of this protection petition were seemingly limited to a single incident some five (5) years prior to the criminal homicide at issue and recounted name calling, a third party threat, and child custody concerns. *See* Commonwealth Exhibit CM-11 — Protection from Abuse Petition, No. 09-81077 — Delaware County, p. 3. Further, this court on the record at bar was presented no evidence by the prosecution about the intervening three (3) years between this protection form abuse action (No. 09-81077) and that docketed under No. 12-80125. (*E.g.*

22

Resulting from this 2009 filing (No. 09-81077), a final protective order was entered and remained for a certain number of months in effect. The decedent and Defendant were then living separate and apart and/or alternatively, resided together in an ongoing tumultuous relationship.) *See Commonwealth v. Cox supra* 115 A.3d at 337 *quoting Commonwealth v. Ross supra* 57 A.3d at 100 ("To be admissible under this exception, there must be a specific 'logical connection' between the other act[s] and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances."). *See also Commonwealth v. Reed supra* 605 Pa. at 447, 990 A.2d at 1168 and *Commonwealth v. Aikens supra* 990 A.2d at 1185 *quoting Commonwealth v. Luktisch supra* 451 Pa.Super. at 503, 680 A.2d at 879 *quoting Commonwealth v. Miller supra* 541 Pa. at 548-50, 664 A.2d at 1319. Given this unexplained gap in time, this court relatedly questioned its probative value. *Commonwealth v. Ulatoski supra* 472 Pa. at 63, 371 A.2d at 191 *citing Commonwealth v. Minoff supra* 363 Pa. at 295, 69 A.2d at 149-50, and *Commonwealth v. Jones supra* 269 Pa. at 592, 113 A. at 58-59.

The Commonwealth was likewise not for purposes of trial permitted to introduce evidence regarding the protection from abuse action docketed under *Griffin v. Lowry*, No. 08-80665 – Philadelphia County. *See* Order dated January 11, 2016, pp. 4, 12. The domestic violence averments offered in support of this protection petition (No. 08-80665) supposedly occurred an approximate six (6) years before the criminal homicide with which the Defendant stood charged. *See* Commonwealth Exhibit CM-12 – Protection from Abuse Petition, No. 08-80665 – Philadelphia County.

Although there was an implicit temporal nexus between this protection from abuse action (CM-12 – Protection from Abuse Petition, No. 08-80665 – Philadelphia County) and that

23

docketed at No. 09-81077 (CM-11), there was on the instant record once more an unexplained time gap between these filings (Nos. 08-80665 and 09-81077) and the subsequent series of protection from abuse lodgings immediately preceding on an annual basis the charged criminal homicide. *See* Commonwealth Exhibits CM-5 – Protection from Abuse Petition, No. 14-80916; CM-7 – Criminal Complaint, Probable Cause Affidavit and Upper Darby Police Incident Report, No. MD 36-14 (Indirect criminal contempt prosecution); C-7 – Protection from Abuse Petition, No. 14-80916; CM-8 and C-6 – Protection from Abuse Petition and Order, No. 13-81449; and CM-10 and C-5 – Protection from Abuse Petition, No. 12-80125.

This court recognizing such an appreciable, unexplained length of years (2008/09 - 2012) was unable to thus conclude there was a specific logical connection between this proffered 2008 protection from abuse action establishing that the at issue criminal homicide occurring some six (6) years thereafter grew out of this prior factual circumstance, even acknowledging the more apparent time nexus between the 2008 and 2009 protection from abuse petitions. *See Commonwealth v. Cox supra* 115 A.3d at 337 *quoting Commonwealth v. Ross supra* 57 A.3d at 100 ("To be admissible under this exception, there must be a specific 'logical connection' between the other act[s] and the crime at issue which establishes that the crime currently being considered "grew out" of or was in any way caused by the prior set of facts and circumstances."). *See also Commonwealth v. Reed supra* 605 Pa. at 447, 990 A.2d at 1168 and *Commonwealth v. Aikens supra* 990 A.2d at 1185 *quoting Commonwealth v. Luktisch supra* 451 Pa.Super. at 503, 680 A.2d at 879 *quoting Commonwealth v. Miller supra* 541 Pa. at 548-50, 664 A.2d at 1319. Relatedly, this same time gap also called into question the 2008 protection action's (CM-12 – Protection from Abuse Petition, No. 98-80665 – Philadelphia County) probative value. *Commonwealth v. Ulatoski supra* 472 Pa. at 63, 371 A.2d at 191 *citing Commonwealth v. Minoff*

24

363 Pa. at 295, 69 A.2d at 149-50, and *Commonwealth v. Jones supra* 269 Pa. at 592, 113 A. at 58-59.

At trial, the prosecution was also similarly barred from introducing evidence and/or eliciting testimony about a supposed incident occurring on August 25, 2001, and Masako Griffin relatedly reporting to the Philadelphia Police Department that the Defendant had then allegedly menaced as well as threatened her at gunpoint, responding law enforcement recovering a firearm, and/or the Defendant's resultant arrest. *See* Order dated January 11, 2016, pp. 4, 5, 21, and Commonwealth Exhibit CM-13 – Philadelphia Police Department Arrest Report.

This incident the Commonwealth sought at trial to introduce occurred an approximate thirteen (13) years before the charged criminal homicide. *See* Commonwealth Exhibit CM-13 – Philadelphia Police Department Arrest Report. The instant record was silent as to this past prosecution's outcome. Moreover, this court on the record at bar was offered no evidence by the Commonwealth about those material circumstances, if any, throughout the intervening seven (7) years between this alleged event and the decedent lodging on or about May 16, 2008, the protection from abuse action docketed under *Griffin v. Lowry*, No. 08-80665 – Philadelphia County. *See* Commonwealth Exhibit CM-12 – Protection from Abuse Petition, No. 08-80665 – Philadelphia County. In combination with the obvious, significant, and unexplained time gap between this 2001 incident (CM-13) and the respective 2008-2009 protection from abuse actions (CM-11 and CM-12) the victim then lodged against the Defendant, the sparsity of the material record the prosecution advanced to support this proffered trial evidence (CM-13) simply did not adequately demonstrate the required specific logical connection between the same and the at issue murder committed some thirteen (13) years subsequent. *See Commonwealth v. Cox supra* 115 A.3d at 337 *quoting Commonwealth v. Ross supra* 57 A.3d at 100. *See also Commonwealth*

25

*v. Reed supra* 605 Pa. at 447, 990 A.2d at 1168 and *Commonwealth v. Ulatoski supra* 472 Pa. at 63, 321 A.2d at 191 *citing Commonwealth v. Minoff* 363 Pa. at 295, 69 A.2d at 149-50, and *Commonwealth v. Jones supra* 269 Pa. at 592, 113 A. at 58-59.

Beyond outright barring the Commonwealth from introducing six (6) of its thirteen (13) 404(b) evidentiary proffers,[23] prohibiting notable aspects of two (2) others,[24] and only permitting certain such evidence subject to the prosecution subsequently establishing pre-trial an adequate temporal nexus between the same and the at issue murder,[25] this court being most mindful of the prior crime or wrongdoing evidence it did allow the Commonwealth to present through the partial granting of the prosecution's 404(b) motion, repeatedly from literally the trial's outset provided the jurors with cautionary instructions. These cautionary directives reiterated to the jurors the limited purposes for which this evidence was being offered and relatedly that same must not be considered by the jury as Defendant Lowry having a bad character or criminal propensities from which his guilt was to be even inferred.

Starting with the general *voir dire* of the venire panel this court instructed the jury as follows:

> During the trial, ladies and gentlemen, I may as sole Judge of the case's law allow evidence or testimony to be admitted for a specific or limited purpose. I'll bring to your attention any such limitations or specific purposes along with the instruction that the jurors are to consider this evidence or testimony solely for the reasons it was admitted and for no other purposes. Is there anyone

[23] *See* Order dated January 11, 2016; Commonwealth Exhibits CM-1 – Statement of DeShawnna Griffin; CM-6 – Audio Disk of July 17, 2014, Court Hearing; CM-9 – Audio Disk of September 19, 2013, Court Hearing; CM-11 – Protection from Abuse Petition, No. 09-81077 – Delaware County; CM-12 – Protection from Abuse Petition, No. 08-80665 - Philadelphia County; and CM-13 – Philadelphia Police Department Arrest Report.

[24] *See* Order dated January 11, 2016, and Commonwealth Exhibits CM-3 – Statement of Caren Tribble and CM-7 – Criminal Complaint, Probable Cause Affidavit and Upper Darby Police Report, No. MD 36-14.

[25] *See* Order dated January 11, 2016, and Commonwealth Exhibits CM-2 – Statement of Tyeria Sanders and CM-4 – Statement of Cindy Void.

26

among you, ladies and gentlemen, who could not follow this legal principal? If so, please stand. No one is standing.

N.T. 1/20/16, p. 22.

Immediately following the testimony of each of the three (3) challenged witnesses (Tyeria Sanders, Caren Tribble, and Cindy Void), the court additionally provided a cautionary directive per that below:

> Ladies and gentlemen, you've heard testimony from Ms. Sanders, tending to suggest Mr. Lowry may have engaged in wrongful conduct for which he is not now on trial. The evidence of Mr. Lowry's alleged previous bad conduct was allowed by me only for purposes that the Commonwealth attempted to prove malice, ill will, intent and motive as I'll define those terms for you in my concluding legal instructions and to show the chain and sequence of events regarding the supposed facts which lead to the filing of charges against Mr. Lowry. This evidence must not be considered by you in any other way than for that which I just stated. You must not in any manner see this evidence as Mr. Lowry having bad character or criminal propensities from which he may be inclined to determine guilt. You've also heard testimony from Ms. Sanders tending to suggest Ms. Masako Griffin allegedly made certain statements about the nature of her and Mr. Lowry's relationship. These assertions of Ms. Griffin have not been allowed for the truth of that which they contend that it's not for you to believe whether such in fact was the reality of the relationship, but rather for limited purposes of showing her state of mind and again for the Commonwealth attempting to prove material to Ms. Griffin's death ill will, intent and malice as I'll define those terms for you in my closing legal instructions. Similarly, you're not to view this evidence in any manner as Mr. Lowry having bad character or criminal propensities to which you are inclined to determine guilt. The evidence must not be considered by you in anyway [sic] other than that which I have just stated.

N.T. 1/21/16, pp. 24-26, 47-49, 53-55.[26]

---

[26] As the court provided this cautionary instruction three (3) times just after the three (3) prosecution witnesses attacked on appeal so testified, each version slightly differed. Rather than recounting each cautionary instruction in full, only the instruction following Ms. Sanders' testimony has been representationally restated above. N.T. 1/21/16, pp. 47-49, 53-55.

Subsequent to Officer Michael Dehoratius', Upper Darby Township Police Department, and Sandra Robinson's, Delaware County Office of Judicial Support – Protection from Abuse Department, testimony related to the Protection from Abuse actions Masako Griffin past lodged against Defendant Lowry[27] and the indirect criminal contempt action under docket No. MD 36-14,[28] this court also instructed the jury not to view such evidence as Mr. Lowry having bad character and/or any criminal propensities:

> Ladies and gentlemen, you've just heard testimony through the officer tending to suggest Ms. Griffin supposedly made certain prior representations relative to the reference Protection From Abuse action in which Mr. Lowry was named. Mr. Lowry is not now on trial concerning these allegations. These assertions of Ms. Griffin have been permitted not for the truth of the matter which they contends, that is not for you to believe whether such a fact happened, but for the limited purposes of showing her state of mind and for the Commonwealth attempting to establish a motive regarding Ms. Griffin's death as well as ill will, intent and malice as I'll define those terms for you. This evidence must not be considered by you in any way other than the purposes I've just stated. You must not in any matter [sic] regard the evidence as Mr. Lowry having bad character and or [sic] criminal propensities from which you might be inclined to defer guilt. Thank you.

N.T. 1/21/16, pp. 62, 87.[29]

Finally, this court during its final charge to the jury directed that the relevant evidence not be admitted to demonstrate the Defendant's propensity for criminality:

> During the testimony of [Tyeria] Sanders, Carren Tribble and Cindy [Void], you heard evidence that suggest that Mr. Lowry allegedly may have engaged in prior wrongful conduct. You also heard testimony that his supposed wrongful actions relevant to Masako Griffin pursuing Protection from Abuse actions in which

---

[27] *See* Commonwealth Exhibits C-5 – Protection from Abuse Petition, No. 12-80125 and C-6 – Protection from Abuse Petition and Order, No. 13-81449.

[28] *See* C-7 – Protection from Abuse Petition, No. 14-80916.

[29] Again, rather than recount above both the cautionary instructions the court directed after the respective testimony of both Officer Dehoratius and Ms. Robinson, as a representation of each such cautionary instruction, only that following Officer Dehoratius' witness appearance is set forth above. N.T. 1/21/16, pp. 62, 87.

28

Mr. Lowry was named. Mr. Lowry is not now on trial regarding any of these allegations. This evidence of Mr. Lowry's supposed previous bad conduct was allowed by me solely for the purposes of the Commonwealth attempting to prove malice, ill will, intent or motive, as I will shortly define such for you, and to show the chain and sequence of events of those purported facts which led to the filing of the charges now being tried against Mr. Lowry. This evidence must not be considered by you in any way other than for the purposes I've just stated. You must not in any manner regard this as evidence of Mr. Lowry having bad character and/or that Mr. Lowry has criminal propensities from which you might be inclined to infer guilt. You as well heard testimony during the trial that suggest that Mr. Griffin supposedly made certain representations in her filing prior Protection from Abuse actions in which Mr. Lowry was named. Again, I instruct you that Mr. Lowry is not now on trial concerning such allegations. These assertions relevant to the Protection from Abuse actions have not been allowed by me for the truth of that which they contend. That is not for you to believe whether such in fact happened but rather for limited purposes of showing her state of mind and for the Commonwealth attempting to establish a motive regarding Ms. Griffin's death as well as ill will, intent or malice, which I will shortly define those terms for you. This evidence must not be considered by you in any way other than the purposes I just stated. You must not in any manner view this evidence of Mr. Lowry having bad character and criminal propensities from which you might be inclined to find guilt. Ladies and gentlemen, you heard testimony throughout trial tending to suggest Masako Griffin allegedly made certain previous statements about the nature of her and Mr. Lowry's relationship. These assertions have not been allowed for the truth about which they contend. That is not for you to believe whether such a fact was the reality of the relationship but rather for the limited purposes of the Commonwealth attempting to prove a motive material to Ms. Griffin's death as well as ill will, intent or malice, as I'll momentarily define these terms for you. This evidence must not be considered by you in any way other than that which I've just stated. Once more, you must not in any manner regard this evidence of Mr. Lowry having a bad character or that he has criminal propensities from which you might be inclined to infer guilt.

N.T. 1/25/16, pp. 68-70.

The appellate courts in rejecting challenges on appeal to the admission of 404(b) evidence have looked favorably on trial courts providing these type cautionary instructions.

*Commonwealth v. Drumheller supra* 570 Pa. at 138-39, 808 A.2d at 906; *Commonwealth v. Fisher supra* 559 Pa. at 574, Fn. 13, 741 A.2d at 1242, Fn. 13; *Commonwealth v. Hairston supra* 624 Pa. at 160, 84 A.3d at 666; *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa.Super. 2007); and *Commonwealth v. Tyson*, 119 A.2d 353, 360 (Pa.Super. 2015) *quoting Commonwealth v. Hairston supra* 624 Pa. at 160, 84 A.3d at 666.

Further, relevant to these cautionary instructions this court repeatedly directed starting from the trial's commencement, during its material evidentiary presentation, and again at the trial's conclusion, "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions." *Commonwealth v. O'Hannon*, 557 Pa. 256, 262, 732 A.2d 1193, 1196 (1999) *citing Commonwealth v. LaCava*, 542 Pa. 160, 182, 666 A.2d 221, 231 (1995); *Commonwealth v. Brown*, 567 Pa. 272, 289, 786 A.2d 961, 971 (2001), *cert denied*, 537 U.S. 1187, 123 S.Ct. 135, 154 L.Ed.2d 1018 (2003) *citing Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845 (2001) *citing Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995); *Commonwealth v. Spotz*, 587 Pa. 1, 57, 896 A.2d 1191, 1224 (2006) *quoting Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 871 and *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196; and *Commonwealth v. Einhorn*, 911 A.2d 960, 969 (2006)("It must be presumed as a matter of law that the jury did not consider the evidence of the prior assaults for any improper purpose.").

The evidence this court allowed through the partial granting of the prosecution's 404(b) application was as detailed above and in its January 11, 2016, order the result of a discerning deliberative process and not a summarily embracing of all that which the Commonwealth sought to introduce. *See* Commonwealth's Notice; Order dated January 11, 2016; and N.T. 10/23/15, pp. 5-11. The proffered 404(b) evidence which was timely relative to Ms. Griffin's homicide

30

was permitted having a "logical connection" and probative value to the charged murder, while the tendered evidence too temporally remote was barred. *Commonwealth v. Cox supra* 115 A.3d at 337 *quoting Commonwealth v. Ross supra* 57 A.3d at 100 and *Commonwealth v. Ulatoski supra* 472 Pa. at 63, 371 A.2d at 191 *citing Commonwealth v. Minoff supra* 363 Pa. at 295, 69 A.2d at 149-50, and *Commonwealth v. Jones supra* 269 Pa. at 592, 113 A. at 58-59. *See also* Commonwealth Exhibits CM-11 – Protection from Abuse Petition, No. 09-81077 - Delaware County; CM-12 – Protection from Abuse Petition, No. 08-80665 – Philadelphia County; and CM-13 – Philadelphia Police Department Arrest Report. Other evidence was not allowed until the prosecution sufficiently established pre-trial the same enjoyed a sufficient connection in time to the homicide of Ms. Griffin so that the necessary probative value was first demonstrated. *Id.* *See also* Commonwealth Exhibits CM-2 – Statement of Tyeria Sanders; CM-3 - Statement of Caren Tribble; and CM-4 – Statement of Cindy Void; and Order dated January 11, 2016, pp. 1-2,

3. Yet additional of the Commonwealth's tendered 404(b) evidence because of having exceedingly little, if any, meaningful probative value was outright barred. *Id.* *See also* Commonwealth Exhibit CM-1 – Statement of D₀ G₀ and Order dated January 11, 2016, p. 1. Beyond prohibiting the prosecution's attempt to present at trial as its witness the Defendant's and victim's minor child, this court also precluded the Commonwealth from eliciting personal opinion testimony praising Ms. Griffin and denigrating Defendant Lowry. *See* Commonwealth Exhibit CM-3 – Statement of Caren Tribble and Order dated January 11, 2016, p. 2. Finding, *inter alia*, that the potentiality for unfair prejudice outweighed any probative value, the prosecution was likewise barred from playing the audio disks of the protection from abuse court proceedings and the jury did not hear the victim's and the Defendant's in court verbal sparring. Pa.R.E. 404(b)(2). *See also* Commonwealth Exhibits CM-6 – Audio Disk of

31

July 17, 2014, Court Hearing and CM-9 - Audio Disk of September 19, 2013, Court Hearing; and Order dated January 11, 2016, pp. 3, 4. Similarly, once again because of unfair prejudice concerns, the Commonwealth while able to present evidence material to the indirect contempt matter under docket No. MD 36-14, was prohibited from offering that the outcome of this protection from abuse violation proceeding was Defendant Lowry's counseled guilty plea. *Id.* *See also* Commonwealth Exhibit CM-7 – Criminal Complaint, Probable Cause Affidavit and Upper Darby Police Incident Report, No. MD 36-14; and Order dated January 11, 2016, pp. 3-4.

In sum, the evidence this court did allow resulting from the prosecution's 404(b) application was limited to the three (3) years preceding the murder at issue and all salient to the Commonwealth attempting to establish the Defendant's malice, ill will, motive, and/or requisite intent, as well as to show the chain and sequence of events on which this criminal prosecution was grounded, including the troublesome nature of the relationship between Ms. Griffin and Defendant Lowry. *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06 and *Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 (citations omitted).

Although this 404(b) evidence the court permitted was certainly "prejudicial" in that it furthered the Commonwealth's proofs, it was not "unfairly" prejudicially and thus, rightly admitted. As the Pennsylvania Supreme Court found, the unfair prejudice barring otherwise relevant 404(b) evidence must interfere with the jury's duty of weighing evidence impartially or cause its decision to rest on an improper basis. *Commonwealth v. Hairston supra* 624 Pa. at 159, 84 A.3d at 666 *quoting* Pa.R.E. 403 (Comment). This court's careful scrutinizing of the prosecution's proffered 404(b) evidence and resultant decision to allow only that which was timely and clearly salient to the establishing of the Defendant's malice, ill will, motive, necessary intent and/or showing the case's *res gestae* in combination with it repeatedly

32

instructing the jurors as to the limited purposes for which the same was admitted, as well as the related admonishments this evidence was not to be considered as even an inferential showing the Defendant was of a bad character and/or criminal propensities safeguarded that the jury weighed its decisions impartially and its verdict rested on a proper basis. *Id. See also Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196 *citing Commonwealth v. LaCava supra* 542 Pa. at 182, 666 A.2d at 231; and *Commonwealth v. Einhorn supra* 911 A.2d at 969 ("It must be presumed as a matter of law that the jury did not consider the evidence of the prior assaults for any improper purpose.)

Simply because this court in the exercise of its discretion did not reject the sum of the prosecution's 404(b) proffer does not equate to the evidence it did so admit having a probative value outweighed by any supposed, unfair prejudice. "Criminal defendants always wish to excise evidence of unpleasant and unpalatable circumstances surrounding a criminal offense from the Commonwealth's presentation at trial. … The [trial] court is not, however, required to sanitize the trial to eliminate all unpleasant facts from a jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged … ." *Commonwealth v. Lark supra* 518 Pa. at 310, 543 A.2d at 501.

This court's decisions relating to the introduction of the 404(b) evidence and the witness testimony the Defendant now attacks on appeal (Tyeria Sanders, Caren Tribble and Cindy Void) cannot be seen on the instant record as an "overriding or misapplication of the law, or the exercise of judgment that [was] manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality." *Commonwealth v. Antidormi supra* 84 A.3d at 749-50 *quoting Commonwealth v. Weakley supra* 972 A.2d at 1188-89 *citing Commonwealth v. Carroll supra* 936 A.2d at 1152-53.

Rather, this court's findings and related conclusions as recounted above were the deliberative product of it " 'weigh[ing] the relevant and probative value of the evidence against the prejudicial impact of the evidence.' " *Id. quoting Commonwealth v. Weakley supra* 972 A.2d at 1188.

Resultantly, this court did not commit an abuse of discretion in admitting the challenged evidence, and the Defendant's error assignment on appeal otherwise is without merit.

### B. The evidence is insufficient to sustain the conviction for first-degree murder since the Commonwealth failed to prove that Mr. Lowry committed an intentional killing. The element of intent was not established beyond a reasonable doubt.[30]

Defendant Lowry by this error assignment on appeal maintains that the trial evidence was insufficient as a matter of law to sustain his first degree murder[31] conviction. More specifically,[32] the Defendant argues the prosecution did not establish that on his killing of Masako Griffin he acted with the *mens rea* requisite necessary to first degree murder.[33] Despite his averments and contentions to the contrary, a review of the trial record under the well-settled

---

[30] *See* Statement of Matters Complained, No. 7099-14, No. 2.

[31] 18 Pa.C.S. §2502(a).

[32] The Defendant in advancing his murder of the first degree (18 Pa.C.S. §2502(a)) sufficiency error assignment neither contends the prosecution's trial evidence failed to establish any of this crime's additional, requisite elements nor attacks his being the perpetrator of the homicide. *See* Statement of Matters Complained, No. 7099-14, No. 2.

Accordingly, these otherwise necessary elements of murder of the first degree (18 Pa.C.S. §2502(a)) will not in this opinion be discussed. *See Commonwealth v. Veon*, 109 A.3d 754, 775 (Pa.Super. 2015), *appeal granted on other grounds*, 121 A.3d 954, 955 (Pa. 2015)("In order to preserve a challenge to the sufficiency of the evidence on appeal, *the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009). 'Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.' "). (Emphasis added.) *See also Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa.Super. 2004) *citing Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa.Super. 2002) and *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super. 2002). *See also* Pa. SSJI (Crim) 15.2502A.

[33] 18 Pa.C.S. §2502(a).

34

standard governing such a claim readily reveals Defendant Lowry's challenged conviction to rest on legally sufficient evidence. This appellate complaint is meritless.

In evaluating any type of sufficiency claim, the court must accept the evidence in the light most favorable to the Commonwealth and also drawing all rational evidentiary inferences determine whether a reasonable jury could have found that each element of the crime(s) charged was established beyond a reasonable doubt. *Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007) and *Commonwealth v. Rosario*, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994) *citing Commonwealth v. Calderini*, 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992) *citing Commonwealth v. Jackson*, 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court reviewing a sufficiency challenge " … may not weigh the evidence and substitute [its] judgment for the fact-finder." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa.Super. 2011) *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003) *quoting Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super. 2003), *appeal denied*, 575 Pa. 691, 835 A.2d 709 (2003).

The evidence at trial need not " ' … preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt.' " *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. Although a conviction must be based on " … more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis*, 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super. 1997). " … [I]f the record contains support for the convictions,

35

they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

These long-established principles of law governing a sufficiency challenge are equally applicable to cases where the evidence is circumstantial rather than direct, provided the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Kriegler*, 127 A.3d 840, 847 (Pa.Super. 2015) *quoting Commonwealth v. Hartie*, 894 A.2d 800, 803-04 (Pa.Super. 2006) *quoting Commonwealth v. Thomas*, 867 A.2d 594, 597 (Pa.Super. 2005). *See also Commonwealth v. Cox*, 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered " '[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence.' " *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006). *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the finder of fact is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of any witness. Pa. SSJI (Crim) 2.04. Regarding the offered testimony and other trial evidence, the fact finders in making a decision may choose what they value and discount what they find unpersuasive.

Material to this sufficiency of evidence issue advanced by Defendant Lowry on appeal, first degree murder[34] is statutorily defined by the Pennsylvania Crimes Code per that below:

> (a) Murder of the first degree. -- A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

---

[34] 18 Pa.C.S. §2502(a).

18 Pa.C.S. §2502(a).

"In reviewing whether the evidence was sufficient to support a first-degree murder conviction or convictions, the entire trial record must be evaluated and all evidence considered." *Commonwealth v. Sanchez*, 623 Pa. 253, 293, 82 A.3d 943, 967 (2013) *citing Commonwealth v. Johnson*, 604 Pa. 176, 185, 985 A.2d 915, 920 (2009).

"[T]o sustain Appellant's conviction of first-degree murder, we must conclude that the evidence established beyond a reasonable doubt the three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S. § 2502(a); *Commonwealth v. Houser*, 610 Pa. 264, 18 A.3d 1128, 1133 (2011). First-degree murder is an intentional killing, *i.e.*, a 'willful, deliberate and premeditated killing.' 18 Pa.C.S. § 2502(a), (d); *Commonwealth v. Burno*, 626 Pa. 30, 94 A.3d 956, 969 (2014)." *Commonwealth v. Woodard*, 129 A.3d 480, 490 (Pa. 2015), *cert. granted*, 129 A.3d 480 (2016). *See also Commonwealth v. Simpson*, 562 Pa. 255, 265, 754 A.2d 1264, 1269 (2000) *citing Commonwealth v. Hall*, 549 Pa. 269, 279-80, 701 A.2d 190, 195 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998); and *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa.Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2011) *quoting Commonwealth v. Tharp*, 574 Pa. 202, 210, 830 A.2d 519, 523-24 (2003).

The appellate courts have past found " ... specific intent may be formed in an instant." *Id. citing Commonwealth v. Donnelly*, 439 Pa.Super. 70, 75, 653 A.2d 35, 37 (1995). *See also Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015)(" 'We are cognizant that 'the period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death.' ' ") *quoting*

37

*Commonwealth v. Rivera*, 603 Pa. 340, 354, 983 A.2d 1211, 1220 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010); and *Commonwealth v. Fisher*, 564 Pa. 505, 517-18, 769 A.2d 1116, 1124 (2001) *citing Commonwealth v. Mason*, 559 Pa. 500, 510, 741 A.2d 708, 713 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000).

"Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another." *Commonwealth v. Haney*, 131 A.3d 24, 36 (Pa. 2015), *cert. granted*, 131 A.3d 24 (2016) *citing Commonwealth v. Hawkins*, 549 Pa. 352, 368-69, 701 A.2d 492, 500 (1997) *citing Commonwealth v. Meredith*, 490 Pa. 303, 311, 416 A.2d 481, 485 (1980). *See also Commonwealth v. Karenbauer*, 552 Pa. 420, 432, 715 A.2d 1086, 1092-93 (1998) *citing Commonwealth v. Auker*, 545 Pa. 521, 539, 681 A.2d 1305, 1315 (1996); and *Commonwealth v. Jones*, 391 Pa.Super. 292, 305, 570 A.2d 1338, 1346 (1990)(" 'As the Supreme Court has emphasized: '[I]f a deadly force is knowingly applied by the actor to the person of another, the intent to take life is as evident as if the actor stated the intent to kill at the time the force was applied.' ' ") *quoting Commonwealth v. Harvey*, 514 Pa. 531, 538, 526 A.2d 330, 334 (1987).

"This Court has held on several occasions that evidence of death by strangulation can be sufficient to establish the requisite intent for first-degree murder." *Commonwealth v. Martin*, 627 Pa. 623, 644, 101 A.3d 706, 718-19 (2000) *citing Commonwealth v. Pruitt*, 597 Pa. 307, 314, 951 A.2d 307, 318-19 (2008); *Commonwealth v. Mitchell*, 588 Pa. 19, 43, 902 A.2d 430, 445 (2006); and *Commonwealth v. Simmons*, 541 Pa. 211, 227, 662 A.2d 621, 629 (1995). "Death caused by strangulation is sufficient to infer the specific intent required for a conviction of first degree murder. *See Commonwealth v. Harvey* [*supra*] 514 Pa. [at] 538, 526 A.2d [at] 334 (appellant's admission that he placed strap around victim's neck and applied pressure until death resulted was sufficient to find specific intent); *Commonwealth v. Johnson*, 459 Pa. 141, 147, 327

38

A.2d 124, 127 (1974) (placing knotted cord around neck of elderly woman and rigging it so as to strangle victim is consistent with specific intent to take the life of another); *Commonwealth v. Graves*, 310 Pa.Super. 184, 189, 456 A.2d 561, 569 (1983) (jury entitled to find the specific intent to kill required for first degree murder where ten year old child strangled to death)." *Commonwealth v. Simmons supra* 541 Pa. at 228, 662 A.2d at 629. *See also Commonwealth v. Perez*, 625 Pa. 601, 622, 93 A.3d 829, 841 (2014) *citing Commonwealth v. Simmons supra* 541 Pa. at 228, 662 A.2d at 629; and *Commonwealth v. Mitchell supra* 588 Pa. at 43, 902 A.2d at 445.

"The Commonwealth can prove the specific intent to kill from circumstantial evidence." *Commonwealth v. Simpson supra* 562 Pa. at 265, 754 A.2d at 1269 *citing Commonwealth v. Brown*, 551 Pa. 465, 711 A.2d 444 (1998). *See also Commonwealth v. Bolden*, 562 Pa. 94, 101, 753 A.2d 793, 797 (2000) and *Commonwealth v. Mollett supra* 5 A.3d at 313 *quoting Commonwealth v. Tharp supra* 574 Pa. at 210, 830 A.2d at 523–24. " 'Whether or not the assailant intended to end the life of his victim can be proven by the circumstances of the event, for rarely is the killing accompanied by a direct statement of intent by the defendant.' " *Commonwealth v. Jones supra* 391 Pa.Super. at 305, 570 A.2d at 1346 *quoting Commonwealth v. Harvey supra* 514 Pa. at 538, 526 A.2d at 334.

"Specific intent to kill can be inferred from circumstantial evidence of prior verbal threats of murder and prior physical abuse. *See Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986)(finding sufficient evidence of specific intent to kill based on defendant's numerous physical assaults on his wife and his threats, heard by others to kill his wife and burn their house down)." *Commonwealth v. Mitchell supra* 588 Pa. at 44, 902 A.2d at 445.

39

Salient to current considerations, the facts summarized *infra* were credibly established at Defendant Lowry's trial.

At the commencement of the Defendant's trial, the Commonwealth presented five (5) witnesses (Tyeria Sanders, Caren Tribble, Cindy Void, Officer Michael Dehoratius, and Sandra Robinson) to provide an overview of the tumultuous relationship between the Defendant and the decedent, Masako Griffin. N.T. 1/21/16, pp. 5-53.

The first witness, Tyeria Sanders, was Ms. Griffin's niece. N.T. 1/21/16, p. 5. Ms. Sanders per her testimony detailed that during years of 2011 and 2012 she frequently observed the victim and Defendant Lowry engage in heated arguments and confrontations. N.T. 1/21/16, pp. 8-9. Ms. Sanders described how the Defendant on numerous occasions become enraged at Ms. Griffin for failing to answer her phone and/or arriving home at a late hour. N.T. 1/21/16, p. 8. Ms. Sanders as well recounted and demonstrated that Defendant Lowry "would grip [Masako Griffin] up," which this court directed the record to reflect was a " ... grabbing the upper part of the arms, both arms immediately above both elbows." N.T. 1/21/16, p. 9. During her testimony, Ms. Sanders also recalled a time in 2011/2012 where the Defendant purportedly pointed a firearm directly at the victim's head after she threatened to end their relationship. N.T. 1/21/16, p. 10.[35] Ms. Sanders further explained that over the course of the years 2013 and 2014 Defendant Lowry and the Ms. Griffin had argued on numerous occasions over his taking her motor vehicle, money, and bankcard. N.T. 1/21/16, p. 12.

Ms. Sanders additionally related approximately about two (2) weeks prior to the victim's death, she accompanied Ms. Griffin to apply for a protection from abuse order. N.T. 1/21/16, p. 13. After obtaining the protection from abuse order, the Defendant was ultimately forced to

---

[35] Although she overheard this specific argument and the Defendant utter such a threat, Ms. Sanders admittedly did not see him brandish a firearm. N.T. 1/21/16, pp. 10, 17-18.

40

vacate the residence by local police as he had been refusing her previous requests to leave their home. N.T. 1/21/16, pp. 14-15. *See also* Commonwealth Exhibit C-7 – Protection from Abuse Petition, No. 14-80916. Despite the police escorting him from the property, Defendant Lowry later returned and proceeded to kick as well as bang about the home's door. N.T. 1/21/16, pp. 13-14.

This testimony was corroborated by Officer Michael Dehoratius, Upper Darby Police Department, who on July 11, 2014, served the Defendant with a copy of the protection from abuse order which had been entered again him. N.T. 1/21/16, p. 58. Officer Dehoratius presented Defendant Lowry with the order at the victim's residence before directing him to leave the home. N.T. 1/21/16, p. 59. Within the hour, Officer Dehoratius responded back to the victim's house resulting from the Defendant's reappearance at the property and violation of the just issued protective order. N.T. 1/21/16, pp. 59-60. *See also* Commonwealth Exhibit C-7 – Protection from Abuse Petition, No. 14-80916.

Following Officer Dehoratius' testimony, the Commonwealth next presented Sandra Robinson from the Delaware County Office of Judicial Support. N.T. 1/21/16, p. 70. Ms. Robinson's responsibilities for the judicial support office included meeting with individuals applying for Protection from Abuse petitions and determining if they qualify to apply for the same. N.T. 1/21/16, p. 71. Ms. Robinson detailed the process through which a person obtains a protection from abuse order. She as well reviewed the victim's three (3) protection from abuse applications (C-5 – Protection from Abuse Petition, No. 12-80125, C-6 – Protection from Abuse Petition and Order, No. 13-81449, and C-7 - Protection from Abuse Petition, No. 14-80916), all lodged against Defendant Lowry. N.T. 1/21/16, pp. 72-81. *See also* Commonwealth Exhibits C-5 – Protection from Abuse Petition, No. 12-80125; C-6 – Protection from Abuse Petition and

41

Order, No. 13-81449; and Commonwealth Exhibit C-7 – Protection from Abuse Petition, No. 14-80916.[36]

Ms. Robinson read the decedent's statement from her protection of abuse application docketed at *Griffin v. Lowry*, No. 13-81449 – Delaware County, per that below:

> She writes here she he was in the kitchen after talking to him via the phone, 'Deschae came downstairs yelling, you' and it says like a XXX, I guess times three, 'then chocked [*sic*] me and applied pressure. I told him to get his hands off of me and he was going to – and I was getting ready to get some juice and pour it in a glass to eat with my breakfast. When I raised my hand up, he got off my neck. I told him he better put his hands – better not put his hands on me again. If you do, I will defend myself and hit you with the glass. Deschae told me to hit him with the glass and I told him, no, I'm not going to put my hands on you, only if you touch me. He stated I thought so because I will choke you the F [*sic*] out, then dust your boots off and get whatever you want.

N.T. 1/21/16, p. 78. *See also* Commonwealth Exhibits C-6 – Protection from Abuse Petition and Order, No. 13-81449.

The next witness, Caren Tribble, a close friend of the victim, testified regarding a 2013 incident which took place outside of Ms. Tribble's workplace in Philadelphia. N.T. 1/21/16, pp. 27-28. Ms. Tribble recalled Defendant Lowry and the decedent were engaged in a fight outside her store. At the time of this altercation, their minor daughter was present. After the child was removed from the conflict, the Defendant struck the victim. N.T. 1/21/16, pp. 29-31. Ms. Tribble also explained during the year 2014 she had on multiple occasions observed bruises on the decedent which the victim attributed to Defendant Lowry. N.T. 1/21/16, pp. 39-40.

Ms. Tribble as well relayed a conversation she had with the Ms. Griffin in May 2014 shortly after she had ended her relationship with the Defendant. N.T. 1/21/16, pp. 46-47. Ms.

---

[36] Commonwealth Exhibit C-7 – Protection from Abuse Petition, No. 14-80916, contains the following documents all pertaining to this protective action (No. 14-80916) Ms. Griffin filed against the Defendant: A Temporary Protection from Abuse Order dated July 10, 2014; A Final Protection from Abuse Order dated July 21, 2014; and A Final Order of Court related to a listed hearing for October 9, 2014, relevant to the matter's indirect criminal contempt prosecution under No. MD 36-14.

Tribble recalled the victim advised her she purchased an alarm system for her home because she was fearful of Defendant Lowry. N.T. 1/21/16, p. 47.

The Commonwealth as well presented Cindy Void, the victim's cousin, to testify concerning the troublesome relationship between the Defendant and the decedent. N.T. 1/21/16, p. 49. Ms. Void testified about approximately five (5) or six (6) instances in which Defendant Lowry took Ms. Griffin's car without her permission and/or knowledge. N.T. 1/21/16, p. 51.

At trial, Peggy Griffin, the decedent's mother, recalled how she and Masako Griffin, on July 31, 2014, drove the Defendant from the victim's residence at 7000 Emerson Drive, Upper Darby, to a Philadelphia homeless shelter. N.T. 1/21/16, p. 92. Defendant Lowry at the time was living in the shelter due to his past being past removed from the residence (7000 Emerson Drive) via such a protection order. N.T. 1/21/16, pp. 90-91. *See also* Commonwealth Exhibit C-7 – Protection from Abuse Petition, No. 14-80916. The victim then dropped Peggy Griffin off at her apartment. N.T. 1/21/16, pp. 93-94. Sometime after 10:00 P.M., Ms. Griffin called her mother to inform her she had safely arrived home (7000 Emerson Drive). N.T. 1/21/16, p. 94.

The motor vehicle, a silver Dodge Charger, the victim was driving that evening (July 31, 2014) was owned by her mother, Peggy Griffin. N.T. 1/21/16, pp. 96-97. *See* Commonwealth Exhibits C-11 – Photograph of Motor Vehicle and C-12 – Photograph of Motor Vehicle. The decedent was this automobile's primary driver. N.T. 1/21/16, pp. 96-97, 252. As further explained by Peggy Griffin at trial, Defendant Lowry did not have her and/or the victim's permission to use the automobile. N.T. 1/21/16, pp. 97, 178.

On August 2, 2014, Peggy Griffin telephoned the victim, but was unable to reach her. N.T. 1/21/16, p. 95. The decedent's sister, Alista Stevenson, was also unsuccessful in her efforts to contact Ms. Griffin. The victim and Ms. Stevenson had been scheduled to meet on August 1,

43

2014, but Ms. Griffin did not appear as expected. N.T. 1/21/16, pp. 95-96, 108. Following these failed attempts to communicate with the decedent, Ms. Stevenson called Peggy Griffin and the two (2) discussed their respective inability to contact the victim and resultant concerns. N.T. 1/21/16, pp. 111-12. Later that same day (August 2, 2016), Ms. Stevenson drove to the decedent's residence (7000 Emerson Drive) and while there did not observe the silver Dodge Charger. N.T. 1/21/16, p. 113.

Ms. Stevenson once more on August 3, 2014, returned to the victim's home and on arriving at the house she called the police. N.T. 1/21/16, p. 118. Officer Steven Cortese and two (2) other officers from the Upper Darby Police Department responded to the decedent's residence, approximately 7:41 A.M. N.T. 1/21/16, p. 127. After advising the officers of her concerns for her sister's safety, Ms. Stevenson granted them access to the house through the use of her key. N.T. 1/21/16, pp. 120-21, 127-28. The officers during their search of the residence found the body of Ms. Griffin in the home's master bedroom. N.T. 1/21/16, pp. 121, 129-30. *See also* Commonwealth Exhibits C-19 – Photograph of Masako Griffin and C-20 – Photograph of Masako Griffin. At the time the police discovered the decedent, she was laying face-up on the floor with a black article of cloth shrouded over her face. N.T. 1/21/16, pp. 130, 137.

On locating the victim, the uniformed officers contacted their supervisors as well as medical personnel. N.T. 1/21/16, p. 131. Before exiting the residence, the police searched the residence for signs of a forced entry, but observed no such evidence. N.T. 1/21/16, p. 131.

In response to the patrol officers' request, Sergeant Donald Peterson, Upper Darby Police Department, responded to the residence. N.T. 1/21/16, p. 136. Sergeant Peterson was advised the officers found " ... a deceased female in the upstairs bedroom and it appeared suspicious." N.T. 1/21/16, p. 136. Sergeant Peterson entered the home and examined the decedent's body.

44

N.T. 1/21/16, p. 137. On closer inspection, he realized the victim was not breathing, there was some lividity in her arms, and her hands, as well as fingers were stiff. N.T. 1/21/16, p. 137. On August 3, 2014, at 8:02 A.M., Sergeant Peterson pronounced Masako Griffin dead. N.T. 1/21/16, p. 137. Sergeant Peterson and the other officers then secured the scene and contacted the Upper Darby Police Department's detective division. N.T. 1/21/16, p. 137.

After being notified of a death investigation, Upper Darby Police Detectives Phillip Lydon and Leo Hanshaw, proceeded that same morning (August 3, 2014) to Ms. Griffin's home. N.T. 1/21/16, pp. 161-62. Immediately upon entering the residence, the detectives did a cursory examination of the house. The detectives on reaching the master bedroom observed the victim's body on the floor with a black cloth over her face. N.T. 1/21/16, pp. 163-64.

Subsequent to their locating the body, the detectives left the residence intending to discuss with their supervising officer the ongoing investigation; however, their supervisor first contacted Detective Lydon informing him police officers in Jacksonville, Florida had most recently encountered Defendant Lowry. N.T. 1/21/16, pp. 164-66.

The detectives decided the best course of action was to obtain a search warrant for the residence (7000 Emerson Drive). N.T. 1/21/16, p. 169. After acquiring the magisterially approved search warrant, the detectives proceeded back to the home to begin the crime scene's processing. N.T. 1/21/16, p. 169. Detectives Lydon and Hanshaw took photographs of the residence and also collected evidence they deemed possibly relevant to the homicide, including an ADT Security Company business card later identified as belonging to ADT Security Company employee, Steven Hneleski. N.T. 1/21/16, pp. 169-70.

On being notified by the detectives, a representative from the Delaware County Medical Examiner's Office arrived at the house to inspect the victim's body. N.T. 1/21/16, p. 171. The

45

detectives and the medical examiner official removed the cloth and found the victim's tongue was swollen, her eyes open, and evidence of petechiae. N.T. 1/21/16, p. 171. The detectives and medical examiner staff member as well noticed a ligature mark on the right and left sides of Ms. Griffin's neck. N.T. 1/21/16, p. 171. The decedent was observed to be wearing a black wig. N.T. 1/21/16, pp. 248-49. *See* Commonwealth Exhibit C-37a – Wig. The medical examiner official covered the victim's hands and feet in a protective material to preserve any potential evidence for subsequent forensic investigations and analysis. N.T. 1/21/16, p. 175.

Once the execution of the crime scene search warrant was concluded, Detective Lydon contacted the Jacksonville Florida law enforcement authorities and was informed of Defendant Lowry's location, the circumstances of the same, as well his stealing the decedent's motor vehicle. N.T. 1/21/16, p. 177.

Due to their finding of his business card at the residence (7000 Emerson Drive), the detectives contacted the noted representative from ADT security company, Steven Hneleski. N.T. 1/21/16, pp. 102-03, 169-70. *See also* Commonwealth Exhibit C-13 – Steven Hneleski Interview. Mr. Hneleski testified at trial that on August 1, 2014, he had a scheduled appointment with the victim at her residence. N.T. 1/21/16, p. 103. On arriving that morning at 9:30 A.M., Mr. Hneleski knocked on the door without any response and also telephoned Ms. Griffin. N.T. 1/21/16, p. 105. After waiting about twenty (20) to thirty (30) minutes with no answer, Mr. Hneleski left a note on the door with his phone number. N.T. 1/21/16, p. 105.

On speaking to the decedent's mother, Peggy Griffin, the detectives were informed that she and the victim on July 31, 2014, had previously dropped off Defendant Lowry at a shelter in Philadelphia, located at 907 Hamilton Street. N.T. 1/21/16, pp. 179-80. The detectives thereafter contacted the shelter and were advised it kept an entry log of the residents' comings

46

and goings. The shelter's records revealed Defendant Lowry had entered the shelter at approximately 11:19 P.M., on the night of July 31, 2014. N.T. 1/21/16, pp. 180-86. *See also* Commonwealth Exhibits C-57 – Surveillance Footage[37] and C-58 – Shelter Housing Records.[38] The shelter's records further confirmed the same through the residents' swipe card system and via the facility's security cameras. N.T. 1/21/16, pp. 181-85. Defendant Lowry through the security surveillance system was also observed exiting the shelter on August 1, 2014, around 2:43 A.M. N.T. 1/21/16, p. 185.

Detective Lydon as well learned the Defendant possessed a Global Cash Card through his employer which was used four (4) times on August 1, 2014, at approximately 4:30 A.M., two (2) hours after he departed the shelter. N.T. 1/21/16, pp. 190-92. *See also* Commonwealth Exhibit C-59 – Global Cash Card Statement.[39] These transactions were all conducted via an ATM machine located at 3154 North Broad Street, Philadelphia, in proximity to the Defendant's shelter. N.T. 1/21/16, p. 194. *See also* Commonwealth Exhibits C-59 – Global Cash Card Statement and C-61 – Area Map.

At trial, Detective Lydon explained to the jury that SEPTA buses run overnight thus permitting Defendant Lowry to travel from the shelter to the decedent's residence on the night of the murder. N.T. 1/21/16, p. 195. Detective Lydon estimated that the public transportation travel time from the ATM (3154 North Broad Street, Philadelphia) to Ms. Griffin's residence (7000 Emerson Drive, Upper Darby) would take approximately just under one (1) hour. N.T. 1/21/16, p. 195. *See also* Commonwealth Exhibit C-63 – Area Map.

---

[37] A proper chain of custody regarding the shelter's surveillance footage records was established via counsel's stipulation. *See* Commonwealth Exhibit C-68 – Stipulation - Surveillance Footage. N.T. 1/21/16, pp. 241-42.

[38] Per counsel's stipulation, a proper custodial chain as to the shelter's card recording system records was agreed. *See* Commonwealth Exhibit C-67 – Stipulation - Swipe Card Records. N.T. 1/21/16, pp. 240-41.

[39] A proper chain of custody regarding the Defendant's Global Cash Card records was proven via counsel's stipulation C-69 – Stipulation - Global Cash Card Statement. N.T. 1/21/16, p. 242.

On being informed by the Jacksonville law enforcement officials that the Defendant was in Jacksonville, Florida, and in possession of the decedent's motor vehicle, the detectives then contacted the Departments of Transportation in the states of Delaware, New Jersey, Pennsylvania and Maryland for evidence the Defendant had traveled through those states using a description and/or the license plate number of the motor vehicle. N.T. 1/21/16, p. 199. Maryland authorities responded by providing information that Defendant Lowry had been observed on their highways at four (4) different times on August 1, 2014. N.T. 1/21/16, p. 199. On further investigating, Detective Lydon discovered the registered owner of the motor vehicle was Peggy Griffin. N.T. 1/21/16, pp. 177-78, 252.

Detective Matthew Rowles, Upper Darby Township Police Department, testified at trial based on his being certified in cellular phone forensic and technology, as well as his examination of Defendant Lowry's and the victim's cellular phones and related provider records.[40] N.T. 1/21/16, p. 225. *See also* Commonwealth Exhibits C-51 – Detective Matthew Rowles' Resume, C-52 – T-Mobile Cellular Phone Records for Masako Griffin, and C-54 – Metro GPS Cellular Phone Records for De-Schae Lowry.

Detective Rowles' examination of the decedent's cellular phone records revealed the last outgoing call from her cellular phone took place on July 31, 2014, at 11:35 P.M. N.T. 1/21/16, pp. 226-27. *See also* Commonwealth Exhibit C-52 - T-Mobile Cellular Phone Records for Masako Griffin. An analysis of the Defendant's cellular phone records revealed his last outgoing call was 11:58 P.M., on July 31, 2014. N.T. 1/21/16, pp. 233, 235. *See also* Commonwealth Exhibit C-54 – Metro GPS Cellular Phone Records for De-Schae Lowry. The cellular phone data disclosed the Defendant's last two (2) phone calls were to the decedent. N.T. 1/22/16, p. 9.

---

[40] Per counsel's stipulations, a proper chain of custody as to the records for these two (2) cellular phones was established. *See* C-70 – Stipulation Metro PCS Cellular Phone Records and C-71 – Stipulation T-Mobile Cellular Phone Records. N.T. 1/21/16, pp. 242-43.

Defendant Lowry's cellular phone on the night in question (July 31, 2014) through the use of cellular tower mapping was found to be in the Philadelphia area around the vicinity of the shelter at the time of the last phone call which was at 11:58 P.M. N.T. 1/21/16, pp. 235-36. Following this position, there was no additional location data for the Defendant's cellular phone due to the phone being turned off. N.T. 1/21/16, p. 236. Detective Rowles testified that once a cellular phone is turned off and/or the battery is removed the location of the cellular phone can no longer be traced through the cellular phone company. N.T. 1/21/16, pp. 235-37. *See also* Commonwealth Exhibit C-53 – Cellular Tower Map.

On August 3, 2014, Patrolman Kareem Saoud and Officer Paul Cross, Jacksonville Sheriff's Office, were attending a unit roll call meeting in a commercial parking lot when they and the other sheriff's office personnel present observed a silver Dodge Charger enter the same parking lot. N.T. 1/21/16, pp. 140-42, 154. *See also* Commonwealth Exhibit C-40 – Jacksonville Sheriff's Office Incident Report. After entering the lot, the driver parked and exited the motor vehicle.[41] N.T. 1/21/16, p. 143. On first observing the Defendant, Patrolman Saoud initially believed he was in need of medical help and/or intoxicated. N.T. 1/21/16, p. 143.

On approaching Defendant Lowry, the law enforcement officials noticed his shirt was covered in blood. N.T. 1/21/16, pp. 143-45. The officers inquired as to his need for help, prompting the Defendant to reply " ... on Friday I went home and found my wife murdered in Philadelphia and I took a bunch of pills and I cut my wrists." N.T. 1/21/16, p. 147. Defendant Lowry then showed to the officers that his wrist had been superficially cut. N.T. 1/21/16, p. 147. The Defendant provided his name and Masako Griffin's name, the woman he identified to be his wife. N.T. 1/21/16, pp. 148-49. Patrolman Saoud inquired as to whether the Defendant had contacted the local Delaware County police about his murdered wife to which Defendant Lowry

---

[41] At trial, Patrolman Saoud identified the driver as Defendant Lowry. N.T. 1/21/16, p. 143.

49

replied, he had not placed any calls about the homicide. N.T. 1/21/16, p. 149. Next, Patrolman Saoud asked Defendant Lowry about his purpose for being in Florida to which he replied "he was just driving and he didn't have a reason." N.T. 1/21/16, p. 149. The Defendant was then transported to a Jacksonville area hospital. N.T. 1/21/16, p. 150. Stemming from their contact with Defendant Lowry, the Florida officers notified the Upper Darby Police Department of the information provided by Defendant Lowry. N.T. 1/21/16, p. 149.

While conducting a plain view inspection of the motor vehicle, Officer Paul Cross observed on the driver side door blood marks. N.T. 1/21/16, p. 156. *See also* Commonwealth Exhibits C-46 – Photograph of Interior of Motor Vehicle and C-40 – Jacksonville Sheriff's Office Incident Report. Officer Cross as well found an identification card in the console, a bloody t-shirt, and a box cutter. N.T. 1/21/16, p. 156. *See also* Commonwealth Exhibit C-47 – Photograph of Identification and Shirt. The identification card belonged to Masako Griffin. N.T. 1/21/16, p. 157. *See also* Commonwealth Exhibit C-49 – Photograph of Identification Card.

Detective Leo Hanshaw traveled to Jacksonville on August 4, 2014, to continue this homicide investigation. N.T. 1/21/16, p. 246. While then searching the silver Charger, along with the sheriff's office personnel, Detective Hanshaw found the Defendant's cellular phone. N.T. 1/21/16, pp. 246-47. An examination of Defendant Lowry's cellular phone revealed the battery had previously been removed consistent with the phone's location data having no further tower connections as of July 31, 2014, approximately 11:59 P.M. N.T. 1/21/16, pp. 235-36, 247. A further search of the motor vehicle by Detective Hanshaw uncovered a black, power cord. N.T. 1/21/16, pp. 247-48. *See also* Commonwealth Exhibit C-35a - Cord. Attached to this same

cord was a black strand of hair. N.T. 1/21/16, p. 248. *See also* Commonwealth Exhibit C-36a – Hair found on Cord.

At the time of trial, Dr. Fredric N. Hellman had been employed as the Chief Medical Examiner of Delaware County for over sixteen (16) years. N.T. 1/22/16, p. 15. During this tenure, Dr. Hellman had conducted approximately six thousand (6,000) autopsy examinations. N.T. 1/22/16, p. 15. Without objection, Dr. Hellman was qualified as an expert in the field of forensic pathology. N.T. 1/22/16, p. 17.

In his capacity as Delaware County Medical Examiner, Dr. Hellman on August 4, 2014, conducted a post-mortem examination of Masako Griffin's body. N.T. 1/22/16, p. 17. Dr. Hellman as well prepared a report in connection with this autopsy investigation. N.T. 1/22/16, p. 17. *See also* Commonwealth Exhibit C-21 – Autopsy Report. Within a reasonable degree of medical certainty, Dr. Hellman opined the cause of Masako Griffin's death to be ligature strangulation and the manner of death was criminal homicide. N.T. 1/22/16, pp. 19, 30. *See also* Commonwealth Exhibit C-21 – Autopsy Report. For further clarification, Dr. Hellman described his use of the word ligature for the jury "[a] ligature is a band-shaped ligament ... that can be wrapped at least part way across the neck with pressure applied to at the very least prevent blood from draining from the brain ... ." N.T. 1/22/16, p. 19. Dr. Hellman further elaborated that depending on the length of time only a minimal amount of applied force is necessary to prevent blood from draining from the brain. N.T. 1/22/16, p. 20. Dr. Hellman relatedly offered that in a matter of seconds this continued, uninterrupted pressure can cause death. N.T. 1/22/16, pp. 22, 31.

During his examination of the victim's body, Dr. Hellman found bruising around the neck, right upper arm, left upper chest, as well additional bruising found on the victim's left hand

51

and right arm. N.T. 1/22/16, pp. 27-29. *See also* Commonwealth Exhibits C-24 – Photograph of Masako Griffin; C-25 – Photograph of Masako Griffin; C-26 – Photograph of Masako Griffin; and C-27 - Photograph of Masako Griffin. Dr. Hellman also found blunt force trauma to the back of the victim's neck. N.T. 1/22/16, p. 39. *See also* Commonwealth Exhibit C-34 – Photograph of Masako Griffin.

Relevant to the victim's tongue, the doctor found she had extensive bite mark hemorrhages of the tongue, extending all along the front of her tongue and the sides of the tongue, as well as in the front middle portion of the tongue resulting in extensive bruising. N.T. 1/22/16, p. 30. Dr. Hellman opined throughout the time the victim was subjected to the ligature strangulation, she had bit her tongue. N.T. 1/22/16, p. 30.

On examining the victim's eyes, Dr. Hellman found there were hemorrhages that extensively involved each eye and the eyelids. N.T. 1/22/16, p. 30. The right eye additionally contained petechiae, as well as several large blotchy hemorrhages which Dr. Hellman explained arise in the context of ligature strangulation where there is repeated stoppage of bloodflow followed by reflow of blood to the brain. N.T. 1/22/16, p. 30.

While conducting an examination of the victim's neck area and its discoloration, Dr. Hellman found ligature marks. N.T. 1/22/16, pp. 33-34. *See also* Commonwealth Exhibits C-28 – Photograph of Masako Griffin; C-29 – Photograph of Masako Griffin; C-30 - Photograph of Masako Griffin; C-31 - Photograph of Masako Griffin; C-32 - Photograph of Masako Griffin; C-33 - Photograph of Masako Griffin; and C-34 - Photograph of Masako Griffin. The ligature markings were very thin, approximately one eighth (1/8) of an inch in thickness. N.T. 1/22/16, pp. 25, 33, 39. *See also* Commonwealth Exhibits C-23 – Photograph of Masako Griffin and C-32 – Photograph of Masako Griffin. Above and below the ligature markings were scratches

52

and abrasions Dr. Hellman believed were made by fingernails. N.T. 1/22/16, pp. 25, 34, 36. *See also* Commonwealth Exhibits C-23 – Photograph of Masako Griffin; C-29 – Photograph of Masako Griffin; and C-31 – Photograph of Masako Griffin.

On being presented with the cord past found in the decedent's motor vehicle, the black power cord recovered with Defendant Lowry's cellular telephone, Dr. Hellman could not unequivocally state the cord was the weapon used to strangle the victim, but did note in various, material respects it certainly was consistent with the ligature used to murder Ms. Griffin. N.T. 1/22/16, pp. 40-41. *See also* Commonwealth Exhibit C-35a - Cord.

Stemming from the appearance of fingernail scrapes at the location of the ligature marks on the victim's neck, Dr. Hellman for additional forensic review clipped the fingernails from both the decedent's hands. N.T. 1/22/16, p. 47.

The Commonwealth next presented Rachel Rodriguez, a forensic DNA scientist at the Pennsylvania State Police Forensic DNA Division. N.T. 1/22/16, pp. 48-49. At the time of trial, Ms. Rodriguez had been so employed by the Commonwealth for approximately four (4) years. N.T. 1/22/16, p. 49. In her role as a forensic DNA scientist, Ms. Rodriguez was "responsible for the analysis and interpretation of DNA from casework samples." N.T. 1/22/16, p. 49. *See also* Commonwealth Exhibit C-38 – Rachel Rodriguez's Curriculum Vitae. Without objection, Ms. Rodriguez was qualified as an expert in the field of DNA profiling. N.T. 1/22/16, p. 50.

Ms. Rodriguez conducted a DNA analysis involving the homicide investigation of Masako Griffin and prepared a resultant report. N.T. 1/22/16, p. 54. *See also* Commonwealth Exhibit C-39 – Rachel Rodriguez DNA Report. On her analyzing the fingernail clippings provided by Dr. Hellman, Ms. Rodriguez found the left hand fingernail clippings from the victim revealed a DNA profile consistent with a mixture of at least two (2) individuals. Such revealed

Masako Griffin and Deschae Lowry could not be excluded as potential contributors to this mixture. N.T. 1/22/16, p. 55. *See also* Commonwealth Exhibit C-39 – Rachel Rodriguez DNA Report. An examination of the victim's right hand nail clippings revealed identical results. N.T. 1/22/16, p. 57. Ms. Rodriguez explained, in layman's terms, the forensic evidence found under the victim's fingernails from each of her hands were DNA "matches" for both Masako Griffin and Deschae Lowry. N.T. 1/22/16, p. 58. *See also* Commonwealth Exhibit C-39 – Rachel Rodriguez DNA Report.

Ms. Rodriguez also completed a DNA analysis of the cord past found in the victim's motor vehicle. N.T. 1/22/16, p. 59. *See also* Commonwealth Exhibit C-35a – Cord. The results of Ms. Rodriguez's findings revealed the cord contained samples which "matched" Defendant Lowry's DNA. N.T. 1/22/16, p. 60. *See also* Commonwealth Exhibit C-39 – Rachel Rodriguez DNA Report.

Defendant Lowry via this assignment of error advances on appeal that the case record was insufficient as a matter of law to sustain his first degree murder[42] conviction in that the trial evidence did not establish his necessary intent required of first degree murder.[43] *See* Concise Statement of Matters Complained, No. 7099-14, No. 1. Based on the above-recounted salient facts credibly established at trial, as well as accepting the evidence in the light most favorable to the prosecution and the reasoned inferences flowing from such, Defendant Lowry's sufficiency challenge is meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

---

[42] 18 Pa.C.S. §2502(a).
[43] *Id.*

The Pennsylvania appellate courts have repeatedly held " ... death by strangulation can be sufficient to establish the requisite intent for first degree murder." *Commonwealth v. Martin supra* 627 Pa. at 644, 101 A.3d at 718-19 *citing Commonwealth v. Pruitt supra* 597 Pa. at 314, 951 A.2d at 318-19; *Commonwealth v. Mitchell supra* 588 Pa. at 43, 902 A.2d at 445; *Commonwealth v. Simmons supra* 541 Pa. at 227, 662 A.2d at 629; and *Commonwealth v. Perez supra* 541 Pa. at 228, 662 A.2d at 629. As Masako Griffin's death was the result of ligature strangulation, the Defendant's specific intent to commit the homicide may reasonably be inferred.

Dr. Hellman at trial testified Masako Griffin's death was caused by a ligature strangulation. N.T. 1/21/16, pp. 178-79. N.T. 1/22/16, pp. 17, 19, 20, 30. *See also* Commonwealth Exhibits C-21 – Autopsy Report; C-28 – Photograph of Masako Griffin; C-29 – Photograph of Masako Griffin; C-30 - Photograph of Masako Griffin; C-31 - Photograph of Masako Griffin; C-32 - Photograph of Masako Griffin; C-33 - Photograph of Masako Griffin; and C-34- Photograph of Masako Griffin. Dr. Hellman's conclusion that the victim died as a result of ligature strangulation was supported by the hemorrhaging of her eyes and tongue, as well as bruising to her body. N.T. 1/22/16, pp. 27-29, 30, 33-34. *See also* Commonwealth Exhibits C-24 – Photograph of Masako Griffin; C-25 – Photograph of Masako Griffin; C-26 – Photograph of Masako Griffin; and C-27 - Photograph of Masako Griffin. In addition to the victim's other observable bruises, there were clear signs of blunt force trauma to the back of Masako Griffin's head. N.T. 1/22/16, pp. 38-39. *See also* Commonwealth Exhibit C-34 – Photograph of Masako Griffin.

During his autopsy examination, Dr. Hellman also notably discovered what he described as ligature marks which were clearly observable across the victim's neck. These furrows were

thin, approximately one eighth (1/8) of an inch in thickness. N.T. 1/22/16, pp. 25, 33-37, 39. *See also* Commonwealth Exhibits C-23 – Photograph of Masako Griffin C-28 – Photograph of Masako Griffin; C-29 – Photograph of Masako Griffin; C-30 - Photograph of Masako Griffin; C-31 - Photograph of Masako Griffin; C-32 - Photograph of Masako Griffin; C-33 - Photograph of Masako Griffin; and C-34 - Photograph of Masako Griffin.

The ligature strangulation marks were accompanied by the presence of what Dr. Hellman characterized as nail scratch marks or abrasions. N.T. 1/22/16, pp. 25, 34-37. *See also* Commonwealth Exhibits C-23 – Photograph of Masako Griffin; C-29 – Photograph of Masako Griffin; and C-31 – Photograph of Masako Griffin. An analysis of the DNA evidence obtained from Ms. Griffin's fingernail clippings revealed the presence of both the victim's and Defendant Lowry's DNA profiles. N.T. 1/22/16, pp. 55, 57, 58. *See also* Commonwealth Exhibit C-39 – Rachel Rodriguez DNA Report.

While Dr. Hellman was unable to conclusively state the power cord found in the motor vehicle, together with the Defendant's cellular telephone, was the item used to strangle Masako Griffin, he did conduct an examination of the same and determined this cord was in various, material respects wholly consistent with the ligature used to murder Masako Griffin. N.T. 1/22/16, pp. 40-41. *See also* Commonwealth Exhibit C-35a - Cord. Dr. Hellman testified this cord matched the width of the ligature markings, one eighth (1/8) of an inch, that lined Ms. Griffin's neck. N.T. 1/22/16, pp. 39-40. *See also* Commonwealth Exhibit C-35a - Cord. Moreover, the autopsy evidence demonstrated the item used to strangle Ms. Griffin lacked any markings (braided rope and/or a pattern band), like this cord which was smooth. N.T. 1/22/16, p. 40. *See also* Commonwealth Exhibit C-35a - Cord. This cord also possessed scuff markings concentrated in the area Dr. Hellman believed would have been the region where force was

applied to strangle Ms. Griffin. N.T. 1/22/16, pp. 40-41. *See also* Commonwealth Exhibit C-35a - Cord. *See also Commonwealth v. Mollett supra* 5 A.3d at 313 *citing Commonwealth v. Donnelly supra* 439 Pa.Super. at 75, 653 A.2d at 37; and *Commonwealth v. Hitcho supra* 123 A.3d at 746.

Beyond Dr. Hellman's testimony, standing alone, being legally sufficient evidence to support the jury's finding of the requisite *mens rea, Commonwealth v. Martin supra* 627 Pa. at 644, 101 A.3d at 718-19 *citing Commonwealth v. Pruitt supra* 597 Pa. at 314, 951 A.2d at 318-19; *Commonwealth v. Mitchell supra* 588 Pa. at 43, 902 A.2d at 445; *Commonwealth v. Simmons supra* 541 Pa. at 227, 662 A.2d at 629; and *Commonwealth v. Perez supra* 541 Pa. at 228, 662 A.2d at 629, Defendant Lowry's specific intent to murder Masako Griffin can as well be inferred through his "prior verbal threats of murder and prior physical abuse." *Commonwealth v. Mitchell supra* 588 Pa. at 44, 902 A.2d at 445. *See also generally Commonwealth v. Ulatoski supra* 472 Pa. at 60-61, 371 A.2d at 190 and *Commonwealth v. Drumheller supra* 570 Pa. at 137-39, 808 A.2d at 905-06.

The trial evidence demonstrated a turbulent and at times violent past through the Defendant's actions directed at the decedent. Defendant Lowry was shown to have threatened, grabbed, choked, and struck the victim in the two (2) to three (3) years immediately proceeding the murder at bar. N.T. 1/21/16, pp. 8-9, 10, 12, 13-15, 27-28, 29-31, 39-40, 78. Moreover, this aggressive and abusive behavior by the Defendant reached such magnitudes that the victim not only sought three (3) protection from abuse orders in 2012, 2013, and 2014, but also felt compelled just before her murder to install at her home an alarm system. N.T. 1/21/16, pp. 13, 47, 72-80. *See also* Commonwealth Exhibits C-5 – Protection from Abuse Petition, No. 12-80125; C-6 – Protection from Abuse Petition and Order, No. 13-81449; and C-7 – Protection

57

from Abuse Petition, No. 14-80916. Even when Masako Griffin obtained her final protection from abuse order (Protection from Abuse Order, No. 14-80916), a protective order entered just twenty-one (21) days before Ms. Griffin's murder, Defendant Lowry within an hour of being so served by the police and removed from the home, returned in violation of the same to the residence and was for indirect criminal contempt arrested. N.T. 1/21/16, pp. 14-15, 58-60, 80. *See also* Commonwealth Exhibit C-7 – Protection from Abuse Petition, No. 14-80916.

Based on the foregoing trial evidence, when viewed in the light most favorable to the Commonwealth together with the rational inferences such reasonably allows, Defendant Lowry's first degree murder[44] conviction is as a matter of law sound. *See generally Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Kriegler supra* 127 A.3d at 847 *quoting Commonwealth v. Hartie supra* 894 A.2d at 903-04 *quoting Commonwealth v. Thomas supra* 867 A.2d at 597. The trial record most certainly contains more than sufficient evidence to support the jury's finding that when he killed Masako Griffin, Defendant Lowry acted with the specific intent necessary for first degree murder.[45] *Commonwealth v. Martin supra* 627 Pa. at 644, 101 A.3d at 718-19 *citing Commonwealth v. Pruitt supra* 597 Pa. at 314, 951 A.2d at 318-19; *Commonwealth v. Mitchell supra* 588 Pa. at 43, 902 A.2d at 445; *Commonwealth v. Simmons supra* 541 Pa. at 227, 662 A.2d at 629; and *Commonwealth v. Perez supra* 541 Pa. at 228, 662 A.2d at 629.

The jury as the " … sole judge[] of the credibility and weight of all testimony" was "free to believe all, part or none of the evidence." Pa. SSJI (Crim) 2.04. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77.

---

[44] 18 Pa.C.S. §2502(a).
[45] *Id.*

In reviewing Defendant Lowry's sufficiency challenge to his first degree murder conviction, the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. If the court finds " ... the record contains support for the convictions," the decision must remain as the jury concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213.

### C. The evidence is insufficient to sustain the conviction for theft by unlawful taking since the Commonwealth failed to prove, beyond a reasonable doubt, that Mr. Lowry exercised unlawful control over the vehicle at issue with the intent to deprive the owner.[46]

Via this error assignment, Defendant Lowry as well maintains that the trial evidence was insufficient as a matter of law to sustain his theft by unlawful taking[47] conviction. More specifically, the Defendant argues in support of this sufficiency challenge that the evidence " ... failed to prove, beyond a reasonable doubt, that Mr. Lowry exercised unlawful control over the vehicle at issue with the intent to deprive the owner."[48] Again, despite his averments and contentions to the contrary, a review of the trial record under the well-settled standard controlling such a claim reveals the Defendant's challenged conviction to rest on legally sufficient evidence. This appellate complaint is without merit.

The salient statutory language of theft by unlawful taking[49] is defined by the Pennsylvania Crimes Code as follows:

---

[46] *See* Statement of Matters Complained, No. 7108-14, No. 1.

[47] 18 Pa.C.S. §3921(a).

[48] *See* Statement of Matters Complained, No. 7108-14, No. 1.

[49] 18 Pa.C.S. §3921(a).

(a) Movable property.--A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S. §3921(a).

The Pennsylvania Crimes Code also explicitly details the meaning of "moveable property" as used above:

'Movable property' is defined as '[p]roperty[,] the location of which can be changed, including things growing on, affixed to, or found in land, and documents although the rights represented thereby have no physical location.'

18 Pa.C.S. §3901.

The definition of "deprive" per that above is as well statutorily defined in the Pennsylvania Crimes Code:

'Deprive.'

(1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

(2) to dispose of the property so as to make it unlikely that the owner will recover it.

18 Pa.C.S. §3901.

Hence, "[p]roof of Theft by Unlawful Taking requires three elements: (1) unlawful taking or unlawful control over movable property; (2) movable property belongs to another; and (3) intent to deprive (permanently)." *See Commonwealth v. Young*, 35 A.3d 54, 62 (Pa.Super. 2011), *appeal denied*, 48 A.3d 1249 (Pa. 2012).[50]

---

[50] The Defendant in setting forth his theft by unlawful (18 Pa.C.S. §3921) sufficiency appellate complaint neither contends the prosecution's trial evidence failed to establish his unlawful taking of Peggy Griffin's motor vehicle nor that the automobile belonged to another individual. *See* Statement of Matters Complained, No. 7108-14, No. 1.

"A person acts with intent if it is his or her conscious object to engage in such conduct or cause such a result." 18 Pa.C.S. §302(b)(1)(i)(ii). *See also* Pa. SSJI (Crim) 15.3921A. "Criminal intent may be established by direct or circumstantial evidence. 'It may be inferred from acts or conduct or the attendant circumstances.' " *Commonwealth v. Grife*, 444 Pa.Super. 362, 374-75, 664 A.2d 116, 122 (1995) *quoting Commonwealth v. Parker*, 387 Pa.Super. 415, 421, 564 A.2d 246, 249 (1989) *quoting Commonwealth v. Russell*, 313 Pa.Super. 534, 543, 460 A.2d 316, 321 (1983), *allocatur denied*, 526 Pa. 632, 584 A.2d 315 (1990); and *Commonwealth v. Matthews*, 870 A.2d 924, 929 (Pa.Super. 2005). *See also Commonwealth v. Hall*, 574 Pa. 233, 241, 830 A.2d 537, 542 (2003)(" 'Criminal intent may be proved by direct or circumstantial evidence.' ") *quoting Commonwealth v. Alexander*, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978).

Given the trial record and this error assignment's lack of specificity otherwise, the court can only surmise this sufficiency attack of the Defendant is premised on his being in the at issue automobile's possession and control when he seemingly at his own instigation came into contact with Jacksonville law enforcement officials and first reported to any police authorities "discovering" Masako Griffin's body. N.T. 1/21/16, pp. 140-49, 154. Flowing from such, it relatedly appears Defendant Lowry is arguing that because he simply used Peggy Griffin's Dodge Charger as a means to bring his wife's death to the attention of police and/or perhaps to

---

Accordingly, these otherwise necessary elements of theft by unlawful taking (18 Pa.C.S. §3921) will not in this opinion be discussed. *See Commonwealth v. Veon supra* 109 A.3d at 775 ("In order to preserve a challenge to the sufficiency of the evidence on appeal, *the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. See Commonwealth v. Garland*[ *supra* 63 A.3d at 344]; *Commonwealth v. Gibbs*[ *supra* 981 A.2d at 281]. 'Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.' "). (Emphasis added.) *See also Commonwealth v. McCree supra* 857 A.2d at 192 *citing Commonwealth v. Lemon supra* 804 A.2d at 37 and *Commonwealth v. Seibert supra* 799 A.2d at 62. *See also* Pa. SSJI (Crim) 15.3921A.

61

solicit medical care he then believed was needed, the *mens rea* requisite necessary to theft by unlawful taking[51] was negated.

Foremost, any such argument by the defense requires the material case record be examined advantageous to Defendant Lowry and summarily ignores the controlling sufficiency claim standard. When properly viewed in a light most favorable to the prosecution, along with the rational inferences the same allows, the trial record contains evidence to support as a matter of law the jury's conclusion that Defendant Lowry on taking possession and control of Peggy Griffin's Dodge Charger did so with the intent to deprive Ms. Griffin of her motor vehicle. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 250-61, 652 A.2d at 364 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 484 A.2d at 1103. *See also* 18 Pa.C.S. §3901 and 18 Pa.C.S. §3921(a).

Both the direct and circumstantial, salient trial evidence credibly established that below as it relates to this appellate complaint.

Peggy Griffin was the silver Dodge Charger's registered owner. N.T. 1/21/16, pp. 96-97, 177-78, 252. Peggy Griffin relatedly testified that while she had previously granted her daughter, Masako Griffin, permission to routinely possess and drive this car, she never extended this same authorization to Defendant Lowry, even on an interim basis. N.T. 1/21/16, pp. 96-97, 178, 252. The Defendant was well aware Peggy Griffin did not approve of his use and/or possession of the Dodge Charger as his taking this automobile on various occasions was the cause of heated arguments between him and the victim. N.T. 1/21/16, pp. 8-9, 12, 51.

Ms. Griffin operating the Dodge Charger arrived home, 7000 Emerson Drive, Upper Darby, Pennsylvania, on July 31, 2014, sometime after 10:00 P.M. N.T. 1/21/16, pp. 92-94.

---

[51] 18 Pa.C.S. §3921(a).

Defendant Lowry left the Philadelphia homeless shelter where he had been staying at approximately 2:43 A.M. on August 1, 2014, and having no motor vehicle made his way to the decedent's home (7000 Emerson Drive) via public transportation. N.T. 1/21/16, pp. 92, 179-80, 185, 195. *See also* Commonwealth Exhibits C-59 – Global Cash Card Statement; C-61 – Area Map; and C-63 – Area Map.

The Defendant murdered the victim at her residence (7000 Emerson Drive) during the next few subsequent hours of the same day, August 1, 2014. N.T. 1/21/16, pp. 95-96, 102-05, 147, 185, 190-92, 195. *See also* Commonwealth Exhibit C-21 – Autopsy Report.

The Dodge Charger was noted driving through the state of Maryland at four (4) separate times on August 1, 2014. N.T. 1/21/16, p. 199.

On August 2, 2016, when she went to Masako Griffin's home to check on her well-being, Alista Stevenson, the victim's sister, observed the Dodge Charger was not then about the house (7000 Emerson Drive). N.T. 1/21/16, p. 113.

On August 3, 2014, Defendant Lowry while in possession and operation of the Dodge Charger came into contact with Jacksonville, Florida law enforcement personnel. N.T. 1/21/16, pp. 140-42, 154.

The totality of this direct and circumstantial evidence demonstrates that just after killing Masako Griffin the Defendant illegally took the Dodge Charger and over the course of almost three (3) days, drove approximately eight hundred (800) miles, through seven (7) states, in a patent, yet failing effort to distance himself from his murderous actions. Such supports the jury's conclusion Defendant Lowry acted with the requisite *mens rea* on his assuming unlawful control of Peggy Griffin's motor vehicle necessary to sustaining the theft by unlawful taking[52] conviction at bar. *See Commonwealth v. Grife supra* 444 Pa.Super. at 374-75, 664 A.2d at 122

---

[52] 18 Pa.C.S. §3921.

63

*quoting Commonwealth v. Parker supra* 387 Pa.Super. at 421, 564 A.2d at 249 *quoting*

*Commonwealth v. Russell supra* 313 Pa.Super. at 543, 460 A.2d at 321 ("Criminal intent may be

established ... 'from acts or conduct of the attendant circumstances.' "). *See also*

*Commonwealth v. Kriegler supra* 127 A.3d at 847 *quoting Commonwealth v. Hartie supra* 894

A.2d at 803-04 *quoting Commonwealth v. Thomas supra* 867 A.2d at 597. *See also* 18 Pa.C.S.

§3901 and 18 Pa.C.S. §3921(a).

The suggestion of Defendant Lowry's apparent argument that he merely used the Dodge

Charger as a ready means to report to police authorities the discovery of his wife's body simply

defies common sense and everyday life experiences, in addition to contradicting the governing

sufficiency review standard. *See Commonwealth v. Patterson supra* 940 A.2d at 500 and

*Commonwealth v. Rosario supra* 438 Pa.Super. at 250-61, 652 A.2d at 364 *citing*

*Commonwealth v. Jackson supra* 506 Pa. at 472-73, 484 A.2d at 1103.

The Defendant at all relevant times was in possession of an operational cellular

telephone, yet on finding his wife's body did not call 911. N.T. 1/21/16, pp. 149, 233, 235, 246-

47. N.T. 1/22/16, p. 9. *See also* Commonwealth Exhibit C-54 – Metro GPS Cellular Phone

Records for De-Schae Lowry. Likewise, on the discovery of his wife's dead body, the

Defendant did not go to the Upper Darby Police Department, a drive of approximately five (5)

minutes, or any of the other many, nearby local police agencies. Instead, as seemingly posited

by the defense, Defendant Lowry took Peggy Griffin's car, not with the requisite intent to

deprive her of the automobile, but to drive some eight hundred (800) miles, throughout the next

three (3) days, to finally make known for some inexplicable reason to Jacksonville, Florida, law

enforcement that he had found Masako Griffin in her Upper Darby home murdered. N.T.

1/21/16, p. 147. Even if not contrary to the long-settled standard governing sufficiency claims,

64

the jury in rejecting any such conclusion most certainly acted reasonably and well within their fact finding prerogative.

Viewing the entirety of the evidence in the light most favorable to the Commonwealth, this verdict of the jurors should be upheld. The evidence at trial need not " ' ... preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt.' " *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. Relatedly, the jury, as the exclusive fact-finders, was " ... free to believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77. *See also Commonwealth v. Hansley supra* 24 A.3d at 416.

It was the jury's task to consider Peggy Griffin, the other material witnesses, and the testimony of the police about the taking of Ms. Griffin's motor vehicle however they reasonably saw fit. The jury's conclusion the trial evidence established the Defendant took the Dodge Charger after committing the murder of Masako Griffin, used it as a readily available mechanism to flee the homicide scene and did so with the intent to deprive Peggy Griffin of her automobile is on the instant record aptly supported. *See Commonwealth v. Grife supra* 444 Pa.Super. at 374-75, 664 A.2d at 122 *quoting Commonwealth v. Parker supra* 387 Pa.Super. at 421, 564 A.2d at 249 *quoting Commonwealth v. Russell supra* 313 Pa.Super. at 543, 460 A.2d at 321. This court is not permitted to set aside the jury's verdict if the record at bar "contains support for the conviction." *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213. As there was sufficient evidence allowing the jury to reach the conclusion Defendant

Lowry committed a theft in taking the motor vehicle that belonged to Peggy Griffin, the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000.

Based on these well-settled governing standards and the trial evidence, the jury was presented with sufficient evidence to sustain its guilty verdict regarding Defendant Lowry's theft by unlawful taking[53] conviction. The Defendant's appellate complaint otherwise is meritless.

### *D. The sentence is illegal since there was insufficient evidence to support the order of restitution.[54]*

Defendant Lowry by this final complaint on appeal challenges this court's imposing as a sentencing condition his restitution payment responsibility most generally maintaining such financial reparation lacked a sufficient evidentiary basis. Not only has this error assignment been previously waived, this court's direction of restitution at sentencing was lawful. This appellate complaint is just meritless.

"In order to preserve an issue for review, a party must make a timely and specific objection." *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa.Super. 2003) *quoting Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa.Super. 1997). *See also Commonwealth v. Whitaker*, 878 A.2d 914, 920, Fn. 3 (Pa.Super. 2005) *citing Commonwealth v. Freeman*, 573 Pa. 532, 550, 827 A.2d 385, 395 (2003). A failure to lodge a timely objection results in the waiver of the claim on appeal. *Commonwealth v. Murray*, 83 A.3d 137, 155 (Pa. 2013). In sum, "[t]o preserve a claim of error for appellate review, a party must make a specific objection to the

---

[53] 18 Pa.C.S. §3921(a).

[54] *See* Statement of Matters Complained, No. 7108-14, No. 2.

alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal."

*Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa.Super. 2014), *reversed on other grounds*, 111 A.3d 168 (Pa. 2015) *citing Commonwealth v. Charleston*, 16 A.3d 505, 527-28 (Pa.Super. 2011), *appeal denied*, 612 Pa. 696, 30 A.3d 486 (2011); and *Commonwealth v. Shamsud–Din*, 995 A.2d 1224, 1226 (Pa.Super. 2010). *See also* N.T. 3/30/16, pp. 16-18.

Regarding the failure to properly and timely safeguard an issue for appeal, the Superior Court has also found:

> It is well settled that issues not raised before the trial court cannot be advanced for the first time on appeal. Pa.R.A.P. 302(a).

> Issue preservation is foundational to proper appellate review. ... By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court ... must be given the opportunity to correct its errors as early as possible. Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. Finally, concepts of fairness and expense to the parties are implicated as well.

*Commonwealth v. Miller*, 80 A.3d 806, 811 (Pa.Super. 2013) *quoting In re F.C. III*, 607 Pa. 45, 64, 2 A.3d 1201, 1211-12 (2010) (citations omitted) and *citing Commonwealth v. Hawkins*, 295 Pa.Super. 429, 439, Fn. 6, 441 A.2d 1308, 1312, Fn. 6 (1982).

Because the Defendant did not past raise any attack challenging the court's sentencing term of restitution either at the sentencing proceeding and/or via a post-sentence motion, the same occasions the waiver of this error assignment for present appellate purposes. N.T. 3/30/16. *See also Commonwealth v. Duffy supra* 832 A.2d at 1136 *quoting Commonwealth v. Brown supra* 701 A.2d at 254. *See also Commonwealth v. Whitaker supra* 878 A.2d at 920, Fn. 3 *citing Commonwealth v. Freeman supra* 573 Pa. at 550, 827 A.2d at 395; *Commonwealth v. Murray*

*supra* 83 A.3d at 155; *Commonwealth v. Akbar supra* 91 A.3d at 235 *citing Commonwealth v. Charleston supra* 16 A.3d at 527-28, *appeal denied*, 612 Pa. 696, 30 A.3d 486 (2011); *Commonwealth v. Shamsud-Din supra* 995 A.2d at 1226; and *Commonwealth v. Miller supra* 80 A.3d at 811 *quoting In re F.C. III supra* 607 Pa. at 64, 2 A.3d at 1211-12 and *citing Commonwealth v. Hawkins supra* 295 Pa.Super. at 439, Fn. 6, 441 A.2d at 1312, Fn. 6. Assuming *arguendo* this complaint on appeal is not deemed waived, it is yet meritless.

The Superior Court has past held regarding a court's order of restitution:

> In the context of criminal proceedings, an order of 'restitution is not simply an award of damages, but, rather, a sentence.' *Commonwealth v. C.L.*, 963 A.2d 489, 494 (Pa.Super. 2008) (citation omitted). An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. *Commonwealth v. Redman*, 864 A.2d 566, 569 (Pa.Super. 2004), *appeal denied*, 583 Pa. 661, 875 A.2d 1074 (2005). '[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.' *Commonwealth v. Hughes*, 986 A.2d 159, 160 (Pa.Super. 2009) (citation omitted).

*Commonwealth v. Atanasio*, 997 A.2d 1181, 1182-83 (Pa.Super. 2010).

Section 1106 of the Pennsylvania Crimes Code mandates restitution be paid "[u]pon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained ... ." 18 Pa.C.S. §1106(a). The relevant statutory language as well directs that a court " ... shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for the loss previously compensated by an insurance company to the insurance company." 18 Pa.C.S. §1106(c)(1)(i). "Although it is mandatory under section 1106(c) to award full restitution, it is still necessary the amount of the 'full restitution' be determined under the adversarial system with considerations of due process," *Commonwealth v. Ortiz*, 854 A.2d 1280, 1282 (Pa.Super.

68

2004), and "[t]he amount of the restitution award may not be excessive or speculative." *Commonwealth v. Atanasio supra* 997 A.2d at 1183 *citing Commonwealth v. Rush*, 909 A.2d 805, 810 (Pa.Super. 2006), *reargument denied*, (Pa.Super. 2006).

At the sentencing proceeding, the Commonwealth presented documentation it previously had provided to defense counsel regarding Defendant Lowry's theft of Peggy Griffin's stolen motor vehicle. N.T. 3/30/16, p. 16. Stemming from the Defendant's theft of her automobile and the Dodge Charger on its recovery being a total loss, State Farm Insurance Company paid Peggy Griffin the sum of seventeen thousand seven hundred three dollars ($17,703.00) pursuant to her insurance policy coverage. N.T. 3/30/16, p. 16. State Farm Insurance Company resultantly sought to be reimbursed for its past payment to Peggy Griffin. N.T. 3/30/16, p. 16.

Following the prosecution's description before this court of the detailed documentation supporting the requested restitution, defense counsel made no objection to such records and/or the proffered sum. N.T. 3/30/16, p. 17. Resultantly, and given the applicable trial record, the court in directing its sentence, *inter alia*, ordered that the Defendant was to pay the total amount of restitution sought by the Commonwealth, seventeen thousand seven hundred three dollars ($17,703.00), to State Farm Insurance Company. N.T. 3/30/16, p. 19. *See also* Certificate of Imposition of Judgment of Sentence, No. 7108-14; N.T. 1/21/16; and N.T. 1/22/16. Relatedly, the court from having presided over the trial was aware of this automobile's condition when recovered. N.T. 1/21/16, pp. 156-57. *See also* Commonwealth Exhibits C-40 – Jacksonville Sheriff's Office Incident Report, C-45 – Photograph of Interior of Motor Vehicle, and C-46 – Photograph of Interior of Motor Vehicle.

The instant record certainly does not reveal this court's imposition of the awarded restitution amount was by any means "excessive or speculative." *Commonwealth v. Atanasio*

69

*supra* 997 A.2d at 1183 *citing Commonwealth v. Rush supra* 909 A.2d at 810. *See also Commonwealth v. Ortiz supra* 854 A.2d at 1282. Defendant Lowry at bar committed the theft of the motor vehicle belonging to Peggy Griffin and as Ms. Griffin received payment from State Farm Insurance Company, the insurance provider in turn sought an award of restitution for that same paid amount which pursuant to the applicable statute it was entitled to receive. 18 Pa.C.S §1106(a)(c)(1)(i) and 18 Pa.C.S. §3921(a). *See also* N.T. 1/25/16, pp. 93-94 and Verdict.

Defense counsel at sentencing did not direct this court's attention to anything about the prosecution's restitution demand being "excessive" and/or "speculative" and neither has Defendant Lowry by his statement of appellate complaints articulated even a single challenge to that which the Commonwealth presented salient to restitution other than his bald, generalized claim. *Commonwealth v. Atanasio supra* 997 A.2d at 1182-83.

Even if not deemed waived for appellate review purposes, the Defendant's final appellate complaint is meritless.

### III. Conclusion

For all the above reasons, Defendant Lowry's convictions and judgment of sentence should be affirmed.

BY THE COURT:

Kevin F. Kelly                                    J.

70